**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**William Scott BARRON, Jr.,
Defendant–Appellant.**

No. 96–36058.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 22, 1998.

Decided April 16, 1999.

David M. Porter, Assistant Federal Public Defender, Sacramento, California, for the defendant-appellant.

Thomas M. Gannon, United States Department of Justice, Washington, D.C., for the plaintiff-appellee.

Before: HUG, Chief Judge, BROWNING, FLETCHER, REINHARDT, NOONAN, O'SCANNLAIN, TROTT, T.G. NELSON, HAWKINS, SILVERMAN, and GRABER, Circuit Judges.

Opinion by Judge NOONAN; Dissent by Judge GRABER; Partial Dissent and Partial Concurrence in the Dissent by Judge TROTT.

NOONAN, Circuit Judge:

When a defendant moves under 28 U.S.C. § 2255 to set aside an illegal conviction and a sentence once imposed as part of a plea agreement, should the district court set aside the entire plea agreement, returning the parties to their pre-plea agreement position, or are other remedies provided by § 2255? Our answer to the first alternative is No and to the second, Yes.

## PROCEEDINGS

On December 17, 1991 William Scott Barron, Jr. of North Pole, Alaska was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), one count of possession of 21 ounces of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and one count of possession of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). The maximum punishment under the first count was ten years, while the mandatory minimum sentence if the defendant had been convicted of a violent felony or serious drug offense on three previous occasions was 15 years. 18 U.S.C. § 924(a)(2) and (e). The maximum under the second count was life imprisonment and the mandatory minimum was ten years. 21 U.S.C. § 841(b)(1)(A). The sentence under the third count was five years consecutive to any term of imprisonment imposed. 18 U.S.C. § 924(c)(1).

On April 20, 1992 Barron entered into a plea agreement with the United States. The parties acknowledged that the agreement was under, and controlled by, Federal Rule of Criminal Procedure 11(e)(1)(A) and (C).[1] Barron agreed to plead guilty to all three counts. The United States agreed to "not seek further prosecution arising out of the facts underlying the present indictment"; to acknowledge that Barron had accepted responsibility; to not seek an enhanced penalty under 18 U.S.C. § 924(e); and to acknowledge that Barron reserved his right to appeal the ruling on his motion to suppress. The parties agreed that Counts one and two should be grouped pursuant to U.S. Sentencing Guidelines Manual § 3D1.2 (1992) in making the sentencing calculation.

On the same date as the agreement was made the district court conducted a hearing at which the government stated that there were "other evidence and other charges that could be brought. We are promising to refrain from bringing those charges, as part of the consideration, and, again, we construe that as part of 11(e)(1)(A), whenever the government is agreeing not to pursue certain charges." The court referred to Rule 11(e)(1)(C) and inquired what was "the specific sentence that you've agreed on as appropriate" under that rule. The government replied that there was no agreement as to a specific sentence but that "we have agreed that the defendant would not be sentenced pursuant to 924(e) [the armed career criminal statute], which provides a penalty of fifteen years to life." Defense counsel noted that, otherwise, there was "at least a possibility that the career offender statute could apply." The prosecutor added that "the relevant conduct in this case, we do believe could potentially bring the case into the 10–to–life provisions of 841(b)."

The court carefully interrogated the defendant as to whether he knew what he

---

1. Fed.R.Crim.P. 11(e)(1) provides:

 The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:

 (A) move for dismissal of other charges; or
 (B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or
 (C) agree that a specific sentence is the appropriate disposition of the case.
 The court shall not participate in any such discussions.

was pleading to and the numerous constitutional rights such as trial by jury and the right to appeal that he was giving up. The court then formally accepted Barron's plea. Sentencing was postponed until receipt of the presentencing report. On June 25, 1992 a sentencing hearing was held. Barron's objections to the presentence report were explored. The court sentenced Barron to ten years on the first two counts to run concurrently and to a consecutive term of five years on the gun count.

Three years later the Supreme Court held that to use a gun for purposes of § 924(c)(1) means "active employment" of the firearm in relation to the drug offense. *Bailey v. United States,* 516 U.S. 137, 143, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Barron then moved under 28 U.S.C. § 2255 to set aside his conviction and sentence imposed under 18 U.S.C. § 924(c)(1). The basis for the motion was as follows: "Ground One: Recent Supreme Court decision in Bailey v. United States makes the Petitioner's conviction under 18 U.S.C. § 924(c) invalid and it should therefore be vacated and dismissed." Ground One was the sole basis for Barron's motion.

In argument to the court Barron noted that he had admitted concealing a gun in a safe merely accessible to him, but not to using the gun in the sense required by *Bailey.* The government conceded that the facts did not justify his conviction on the gun count.

The magistrate judge recommended that Barron's motion under 28 U.S.C. § 2255 be granted but that at the same time the plea agreement should be rescinded. The district court agreed with those recommendations. According to the district court, Barron by the plea agreement had forfeited "any non-jurisdictional defenses including any defense based upon a favorable intervening change in the law." The district court, however, went on to hold that Barron could have the plea agreement set aside on the ground that it was not knowing and voluntary because of ignorance of the law declared by *Bailey.* On

motion for reconsideration the district court explained its reasoning:

> This Court reasoned that a guilty plea waives, or more accurately forfeits, any right to bring a post-conviction relief petition except one challenging the voluntariness of the plea.... The Court would therefore have rejected Barron's § 2255 petition but for the Court's conclusion that *Bailey* undermined the prior finding of voluntariness. The Court was, and is, prepared to give Barron relief, but solely on the basis that his prior plea was involuntary. The proper relief is to withdraw his plea and return the parties to the *status quo ante.*

The court concluded its original order: "Barron's motion for § 2255 relief should be conditioned on his timely withdrawal of his plea."

Barron appealed. A panel of this court unanimously affirmed. 127 F.3d 890 (9th Cir.1997). On petition for rehearing, the court divided. 136 F.3d 675 (9th Cir.1998). The full court granted rehearing en banc. 138 F.3d 809 (9th Cir.1998).

### ANALYSIS

At the outset it is suggested that Barron must show cause and prejudice in order to be in a position to raise the issue he now presents in his § 2255 motion. *Bousley v. United States,* 523 U.S. 614, ——, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998). The government did not raise this objection in the district court or in its briefs on appeal. Ordinarily, the government's failure to raise the petitioner's procedural default at the appropriate time waives the defense. *See Harmon v. Ryan,* 959 F.2d 1457, 1461 (9th Cir.1992). We therefore will usually not allow the government to raise a petitioner's default for the first time on appeal, when it did not take the opportunity to do so before the district court. *See Turner v. Duncan,* 158 F.3d 449, 454–55 (9th Cir.1998); *Francis v. Rison,* 894 F.2d 353, 355 (9th Cir.1990). Because there are no extraordinary circumstances present in this case which would

suggest that justice would be served by overlooking the government's omission, we treat the procedural default as waived. *See Gonzalez v. United States,* 33 F.3d 1047, 1049 (9th Cir.1994); *cf. Paradis v. Arave,* 130 F.3d 385, 390 (9th Cir.1997).

The government argues that *Bousley*'s clarification of the applicability of procedural default rules in this context represented a new development in the law, which excuses its procedural default. But the government acknowledges that the issue resolved by *Bousley* was not "so novel that its legal basis [was] not reasonably available to counsel." *Reed v. Ross,* 468 U.S. 1, 16, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). At the time the Supreme Court granted certiorari in *Bousley,* the government was litigating the applicability of procedural default rules to challenges based on *Bailey* in several circuits. *See In re Hanserd,* 123 F.3d 922 (6th Cir.1997); *Lee v. United States,* 113 F.3d 73 (7th Cir. 1997); *United States v. Barnhardt,* 93 F.3d 706 (10th Cir.1996). In *Bousley* itself, the government had raised the procedural default issue at both the district court and the circuit court level. *See Bousley v. Brooks,* 97 F.3d 284, 287 (8th Cir.1996), *rev'd sub nom. Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). *Bousley* was issued five months before the government's appellate brief was due in this case, yet the government did not raise the procedural default issue here.

Section 2255 grants a prisoner in custody the right "at any time" to bring a motion "to vacate, set aside or correct the sentence" upon the ground that the "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Of these several grounds, Barron chose one, viz., that the sentence was imposed in violation of the laws of the United States.

The district court agreed with Barron's contention and so was in the situation envisaged by § 2255 where the court finds "that the sentence imposed was not authorized by law." At that point the statute instructs the court that it "shall vacate and set the judgment aside" and do one of four things: "discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255. The district court accordingly had to vacate the judgment. Although the judgment is a single unitary act, the clear implication of the statute is that vacating the judgment does not prevent the reinstatement of unchallenged counts when the court decides to resentence or to correct the sentence; otherwise, every successful § 2255 petition would result in either discharging the prisoner or granting a new trial. The statutory language forbids elimination of the two possibilities of resentencing or of correcting the sentence. Barron did not contend that he was entitled to be discharged. The district court effectively had three options: grant a new trial, resentence, or correct the sentence. The district court did not have the option of conditionally granting Barron's motion.

Although Barron did not seek a new trial, the district court chose that option on the ground that Barron's plea agreement had forfeited an appeal on the basis of "a favorable intervening change in the law," so that the only way Barron's motion could be granted was by construing it as an attack on the plea agreement. In this analysis the district court was mistaken for three reasons. First, Barron was not appealing. Second, *Bailey* was not "a favorable intervening change in the law"; it was a determination that at no time had the law forbidden use of a gun in the sense Barron had used a gun. Third, granting a new trial was not necessary to granting his motion. To grant his motion, the district court did not need to construct an argument against the plea agreement. The district court needed only to resentence.

Barron's motion purely and simply asked the district court to vacate a conviction that was void as a matter of law. The motion did not attack the plea agreement in any way. The motion did not assert that Barron had entered the plea agreement unknowingly and involuntarily. The motion did not assert that his conviction of use of a gun was unconstitutional. Barron's motion proceeded on a recognized basis for seeking federal habeas corpus, viz. that he was confined under a void conviction and therefore under a sentence not authorized by law. James S. Liebman & Randy Hertz, *Federal Habeas Corpus Practice and Procedure* § 41.3b at 1192 (2d ed.1994). It is only the analysis of the district court that turned this simple motion into something more, a challenge to the plea agreement. The district court had no authority to invent a new basis for Barron's motion and erred in doing so.

 It is urged that a guilty plea is "a single act," so that it cannot be half knowing and half ignorant. This argument assumes a ground for the § 2255 motion that Barron did not advance. The argument might be rephrased to state that a guilty plea cannot be only partly set aside. This argument is parallel to the argument that, as there is only one judgment, it cannot be vacated and then reinstated in part. These arguments have the ring of metaphysical abstraction. As a practical matter, in § 2255 proceedings judgments are vacated and then reinstated to cover only the valid convictions remaining. *E.g.*, *United States v. Handa*, 122 F.3d 690 (9th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 869, 139 L.Ed.2d 766 (1998). As a practical matter, the guilty plea to criminal acts can remain in force even as the sentence imposed upon an innocent act is set aside. Nor is there any more reason for reducing § 2255 remedies to two (discharge or new trial) when a plea agreement is in force. Just as in the case of vacating a judgment after trial, the district court can distinguish the convictions that are still valid, reinstate the judgment, and resentence. We, along with seven other circuits, followed this procedure in *Handa*.

 The government approaches the question from contract law, an angle distinct from that of the district court. The government argues that Barron breached the agreement by attacking his § 924 conviction and sentence; therefore, there has been a failure of consideration and the government is no longer bound by the agreement. Alternatively, the government contends that there was a mutual mistake of law; the mistake justifies rescission. *Restatement (Second) of Contracts* § 152 (1981 & Supp.1996). The government accurately observes that we have frequently analyzed plea bargains on contract principles. *See, e.g., United States v. Escamilla*, 975 F.2d 568, 571 (9th Cir.1992). To seek to set aside a conviction for conduct that is innocent is neither to breach nor to repudiate the agreement. *United States v. Sandoval–Lopez*, 122 F.3d 797, 802 (9th Cir. 1997). The plea agreement is not at issue.

 Not only is the government mistaken in treating Barron's motion as an attack on the plea agreement, but as the government acknowledges its reliance on contract law is by analogy, and the analogy is not perfect. *United States v. Partida–Parra*, 859 F.2d 629, 634 (9th Cir.1988). A plea bargain is not a commercial exchange. It is an instrument for the enforcement of the criminal law. What is at stake for the defendant is his liberty. On rescission of the agreement, the prisoner can never be returned to his "original position": he has served time by reason of his guilty plea and his surrender of basic constitutional rights; the time he has spent in prison can never be restored, nor can his cooperation in his punishment. What is at stake for the government is its interest in securing just punishment for violation of the law and its interest that an innocent act not be punished at all. The interests at stake and the judicial context in which they are weighed require that something more than contract law be applied. This court has on other occasions declined to extend the contract law analogy to invalidate a plea bargain based on a mutual mistake of law.

*See United States v. Zweber,* 913 F.2d 705, 711 (9th Cir.1990); *Partida–Parra,* 859 F.2d at 634.

The government frames the issue as whether, in the light of *Bailey,* Barron may move, pursuant to § 2255, to vacate his conviction. Phrased in those terms, the answer has to be, "Of course." The government in its brief actually says: "We do not, of course, suggest that appellant should have been required to serve the full 60–month sentence that *Bailey* had invalidated." That proposition, "Serve out your invalid sentence," is repudiated by the government. But, after repudiating this proposition, the government reinstates it by adding: "[T]he proper remedy ... [is] to return the parties to their initial positions," i.e., for Barron to get rid of his five year invalid sentence he must run the risk of prosecution for a crime entailing a life sentence. The government gives with one hand and takes away with the other.

Starkly put, the government is in effect saying, "Serve out your extra five years even though you are innocent; otherwise be prepared to risk imprisonment for life as an armed career criminal even though we agreed in 1991 that we would not charge you with this crime." Cushioned in contract law, the government's claim may not seem wholly unreasonable. Stripped of the contract analogy, the government's position is untenable. As an initial matter the government could not have said, "You are innocent of using a gun, but if you'll plead to it, we'll give up charging you for your career offenses." Unless the government can do the same thing now by invoking contract principles, its case is no better.

The first dissent offers an analysis different from that of the magistrate judge, the district judge, the government in the district court and on appeal, and the majority. The dissent asserts: "UNDER 28 U.S.C. § 2255, THE DISTRICT COURT WAS OBLIGED TO GRANT A NEW TRIAL" (capitals in original). The dissent continues its analysis by stating: "[H]e [Barron] claimed that his *conviction* for violation of 18 U.S.C. § 924(c)(1) should be vacated, because it was procured in violation of his constitutional rights" (emphasis in original). This statement is made in error. Barron sought to set aside his *sentence* and, as a ground, claimed that his conviction was void because it was not authorized by law. The dissent proceeds on a mistaken assumption.

The dissent quotes § 2255 but unaccountably overlooks that the only motion authorized by that statute must begin with a claim as to the sentence. What a prisoner is complaining about when habeas is sought is the imprisonment. By the terms of the statute the prisoner has to attack the sentence, and Barron did so. The dissent goes on to assert that Barron's sentence was "authorized by law" in the sense that the sentence matched the crime of which he stood convicted. This contention is a total abstraction from the facts. If the dissent's construction of "authorized by law" were correct, no sentence that corresponded to the crime of conviction could be set aside even when the prisoner demonstrated complete innocence of the crime. As everyone agrees, Barron should not have been convicted of this crime. The conviction was therefore not authorized by law, and neither was the sentence.

The dissent asserts that the district court must vacate the judgment. On that point there is no dispute. The dissent, however, goes on to say: "Structurally, when the error permitting § 2255 relief lies in the entry of particular *convictions,* the permissible remedies are the discharge of the prisoner or the granting of a new trial as to the unconstitutional convictions" (emphasis in original). Here, too, we are in agreement. The dissent then goes on, however, to discuss *United States v. Marchese,* 341 F.2d 782 (9th Cir.), *cert. denied,* 382 U.S. 817, 86 S.Ct. 41, 15 L.Ed.2d 64 (1965). In that case, after a jury trial the defendants contended that their convictions had been obtained unconstitutionally. *Id.* at 787. The district court agreed and reduced their sentences

from ten to five years. *Id.* at 786. We held that the sentences could not be reduced "without vacating the conviction." *Id.* at 788. We said, "If the court vacates and sets aside the judgment of conviction, then, of course, the prisoner must be discharged, or granted a new trial." *Id.* The dissent makes this single sentence of *Marchese* stand not only for the uncontroversial proposition that the only way an illegal conviction can be corrected is by discharging the prisoner or granting a new trial, but it then contradicts its earlier statement and implies that all the valid counts of conviction must likewise be set aside. *Marchese* says no such thing. The dissent indeed repeats this erroneous implication, stating: "[T]he usual remedy following a successful collateral attack on a conviction resulting from a trial is a new trial." To the contrary, the usual remedy is to set aside the counts on which illegal convictions were obtained and to leave untouched the valid convictions. If the sentence of *Marchese* were literally true in all circumstances, successful § 2255 petitions would regularly lead to a new trial, even though a conviction on only one count was challenged. That is not the way § 2255 petitions are normally handled. *See, e.g.,* *United States v. Handa,* 122 F.3d 690; *Keating v. United States,* 413 F.2d 1028 (9th Cir.1969) (resentence after vacating judgment and vacating one of two convictions). If it were otherwise, the successful challenge of one count might force the government to try other valid counts where the evidence would be stale or dispersed. Section 2255 would become a nightmare for prosecutors.

*Marchese* was simply a case where a district judge erred and was reversed because he reduced the sentence without finding the convictions or sentence illegal and without vacating the underlying judgment. The dissent concludes its discussion of *Marchese* by asserting that we make the same error by ordering resentencing when the petitioner's conviction was obtained unlawfully. What the dissent fails to note is that, unlike *Marchese,* we are not ordering resentencing on the challenged count but

only permitting it on the indisputably valid ones. The claim that *Marchese* forbids the relief that the majority requires is wholly unwarranted.

██ In *United States v. Handa* we embraced the packaging metaphor as enunciated by the Seventh Circuit and adopted by the District of Columbia, First, Third, Fourth, Fifth, and Eighth Circuits. 122 F.3d at 691–92. We held that the "broad and flexible power" conferred by § 2255 authorized the district court, after setting aside an invalid conviction, to resentence on the remaining crimes of which the defendant stands convicted. *Id.* at 691. We do not repudiate this holding; rather, we affirm it so that the district court may vacate the judgment and resentence Barron on the two counts of conviction that still stand, taking into account any relevant enhancement under the Sentencing Guidelines. The dissent, despite lip service to *Handa,* effectively would overrule it.

██ The dissent argues that "the unitary nature of the entry of a plea of guilty to multiple counts" forecloses such a remedy in the instant case. However, the argument that plea bargains must be treated as a package logically applies only in cases in which a petitioner challenges the entire plea as unknowing or involuntary. The dissent relies not on the statutory language of § 2255 but rather on *United States v. Gerard,* which held that a defendant who successfully withdraws from a plea agreement may not object to revival of counts previously dismissed. 491 F.2d 1300, 1305–06 (9th Cir.1974). The dissent ignores that our subsequent decision in *United States v. Sandoval–Lopez,* limited *Gerard* in holding that, unlike a claim that the plea agreement itself was unknowing or involuntary, a collateral challenge to the legality of a particular count of conviction does not constitute a breach of or withdrawal from a plea agreement, and that the remainder of the plea agreement remains in effect. 122 F.3d at 801–02. Moreover, the dissent offers no statutory

authority for vacating counts of conviction that have not been challenged by a § 2255 petitioner.

The drafter of the plea agreement could have anticipated the contingency that has arisen and included a provision protecting the government's interest in the event that Barron's conviction was vacated; that the government did not do so does not justify recission of the agreement. *See id.*

The second dissent follows the government's tack in pressing the analogy between a plea bargain and a contract without acknowledging the differences that are relevant here. This dissent also adopts the approach of the district court in speculating about how to decide a case not before us and strangely underestimates the government's ability to provide in the plea agreement for the contingency that has arisen. That contingency is not, as this dissent erroneously maintains, a change in the law but an authoritative declaration of what the law is. Most notably, the second dissent discussing a procedure that is governed by statute fails to focus on the statute at all. At the North Pole, as in the nation's capital, the search for justice starts with the statute.

Reducing the district court's options to the single option of granting a new trial may sometimes favor the government, sometimes the defendant. The issue should not be decided on the basis of which party is aided but on the basis of what the statute grants: the power to resentence after vacating a judgment that imposed a sentence not authorized by law. The statute incorporates the fundamental principle that it is never just to punish a man or woman for an innocent act. Accordingly, we reverse the district court and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**

GRABER, Circuit Judge, with whom O'SCANNLAIN, TROTT and SILVERMAN, Circuit Judges, join, dissenting:

I respectfully dissent.

Preliminarily, there are four areas in which I agree with the majority:

1. The government waived its opportunity to rely on a theory of procedural default.

2. Barron is entitled to some form of relief under 28 U.S.C. § 2255.

3. By asking the court to vacate a conviction, Barron is not "breaching" the plea agreement.

4. The district court's fashioning of an alternative remedy, giving Barron a choice whether to renege on this entire proceeding, is beyond what the statute authorizes the district court to do.

After that, however, the majority and I part company. As explained below, the district court properly held that Barron's plea was entered unconstitutionally. The district court then was obliged to vacate and set aside the judgment and to grant Barron a new trial. In the context of a plea, the scope of such a new trial (or, of course, a new plea agreement) encompasses any charges that were dismissed and any uncharged crimes that the government agreed not to prosecute (as to which the statute of limitations has not run), subject only to the well-established limitation of due process that the government may not act vindictively to punish a defendant for having exercised the right to challenge the first proceeding.

## UNDER 28 U.S.C. § 2255, THE DISTRICT COURT WAS OBLIGED TO GRANT A NEW TRIAL

Section 2255 provides in part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which im-

posed the sentence to vacate, set aside or correct the sentence.

. . . .

*. . . If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.*

(Emphasis added.)

The emphasized text, on its face, provides a three-step procedure for granting relief:

- First, the district court must determine whether "the judgment was rendered without jurisdiction, or [whether] the sentence imposed was not authorized by law or otherwise open to collateral attack, or [whether] there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."

- Second, if the district court finds one of those conditions, it "shall vacate and set the judgment aside."

- Third, after vacating and setting aside the judgment, the court "shall" do one of four things, as may appear appropriate—(1) discharge the prisoner, (2) resentence the prisoner, (3) grant a new trial, or (4) correct the sentence.

A. *Barron's constitutional rights were infringed so as to render the judgment vulnerable to collateral attack.*

The majority's first mistake, from which others flow, is the assertion (slip op. at 1157) that Barron did—or can in these circumstances—claim that "the sentence was imposed in violation of the laws of the United States." 28 U.S.C. § 2255. A sentencing error presupposes the validity of a conviction, and the corresponding remedy aims only to bring the sentence into line with the proper conviction. That kind of error occurs when, for example, a district court misapplies the Sentencing Guidelines to the crime of conviction, and it is necessary to correct the sentence. Here, the sentence imposed was authorized by law; the sentence matched the crime of conviction, a crime that is stated by a constitutional statute. *See United States v. Vences,* 169 F.3d 611, 613 (9th Cir.1999) (stating that the defendant's "sentence was not illegal because the sentence was authorized by the judgment of conviction and did not impose on [the defendant] a sentence in excess of the statutory penalty").

In the face of that lawful sentence, Barron did not attack his sentence *qua* sentence. Rather, he claimed that his *conviction* for violation of 18 U.S.C. § 924(c)(1) should be vacated, because it was procured in violation of his constitutional rights. Specifically, he alleged that recent Supreme Court precedent, *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), made his *"conviction* under 18 U.S.C. § 924(c) invalid." (Emphasis added.)

At the first step of the analysis, the district court correctly understood that the only way to vacate a conviction after a judgment has been entered on a guilty plea and associated sentence is to hold that the plea was defective.[1] I shall develop

---

**1.** The majority's citation to James S. Liebman & Randy Hertz, *Federal Habeas Corpus Practice and Procedure* § 41.3b at 1192 (2d ed.1994), op. at 1158, does not advance the discussion. The case that the treatise cites, *Bateman v. United States,* 875 F.2d 1304, 1307 (7th Cir.1989), stands only for the undisputed proposition that § 2255 "relief will be

afforded to a prisoner who is able to show . . . that he was convicted of a federal crime and sentenced thereon based upon conduct which under no possible view amounts to a violation of federal law." In that case, however, the court had no occasion to consider what kind of relief would be appropriate, because it held that the prisoner was guilty of the crime

this point more fully in the next section of this opinion, in particular in the discussion of *United States v. Marchese*, 341 F.2d 782 (9th Cir.1965).

The district court properly held that Barron's plea was defective, because it was not made knowingly and intelligently. *United States v. Barron*, 940 F.Supp. 1489, 1490–91 (D.Alaska 1996). Barron's act of pleading guilty was not knowing and intelligent, because he misunderstood what facts the government had to prove if it went to trial. The rubric that § 2255 provides for such a problem is "that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."

B. *The district court's next step is to vacate and set aside the judgment.*

After concluding that a prisoner's plea was not knowing and intelligent, the district court's next step is to vacate and set aside the judgment. Ordinarily (as is true here), there is but one "judgment" in a criminal case. The judgment is the "final decision" that "resolve[s] the ultimate question of the guilt or innocence of the accused" of the crimes charged in the indictment and determines a sentence if there has been a finding of guilt. *United States v. Dior*, 671 F.2d 351, 354 (9th Cir.1982). "In general, a 'judgment' ... is final for the purpose of appeal only 'when it terminates the litigation between the parties on the merits of the case, and leaves nothing to be done but to enforce by execution what has been determined.'" *Id.* (quoting *Parr v. United States*, 351 U.S. 513, 518, 76 S.Ct. 912, 100 L.Ed. 1377 (1956)).

The text of § 2255 embodies those principles. It contemplates that "the judgment" encompasses all counts on which the prisoner was convicted and all sentences imposed with respect to those counts. For example, "discharg[ing] the prisoner," the

first remedial option, would make no sense if only some but not all counts were involved. Moreover, Congress' use of the definite article "the," when referring to "the judgment," carries the message that there is one identifiable document.

Vacating the judgment is simply the mechanism that permits the district court to act again with respect to a case that otherwise has been completed. In fact, there is no other way for the district court to act on the underlying case after entry of a final judgment. *See Marchese*, 341 F.2d at 788 (stating that a judge cannot change or modify a lawful sentence after Rule 35's 60–day period has expired, unless the district court vacates the judgment of conviction). That is why § 2255 makes the act of vacating and setting aside the judgment mandatory, by the use of the term "shall." *See United States v. Contreras*, 895 F.2d 1241, 1243 (9th Cir.1990) (noting that the term "'shall' is used to issue a mandatory directive"). Only after vacating and setting aside the judgment may the court fashion one of the listed remedies, after which the court enters a new judgment.

C. *The appropriate remedy when a guilty plea was entered unknowingly and unintelligently is to grant the prisoner a new trial.*

Section 2255 lists the options that the district court has after vacating and setting aside the judgment. To recapitulate, there are four options: (1) discharge the prisoner, (2) resentence the prisoner, (3) grant the prisoner a new trial, *or* (4) correct the prisoner's sentence. The district court is to choose the "appropriate" alternative. Ordinarily, a given problem will give rise to only one form of remedy.

The choice of remedy is at the heart of this case, and it is at the heart of my disagreement with the majority's approach. The majority holds that the district court simply should have resentenced Barron without taking into account the

charged and thus could obtain no relief at all. *Id.* at 1309–10. Here, by contrast, Barron

was not guilty of violating 18 U.S.C. § 924(c), and he is entitled to some form of relief.

§ 924(c) conviction. That solution misconstrues what occurs structurally when a prisoner challenges the validity of a judgment of conviction and sidesteps well-established principles for fashioning post-conviction remedies for a defective guilty plea.

Structurally, when the error permitting § 2255 relief lies in the entry of particular *convictions*, the permissible remedies are the discharge of the prisoner or the granting of a new trial as to the unconstitutional convictions. More than 30 years ago, this court recognized the precepts embodied in the foregoing sentence.

*Marchese* involved the fate of two prisoners. In a § 2255 proceeding, the two prisoners claimed, among other things, that their *convictions* were procured unconstitutionally, because the government had failed to disclose certain information to the defense and because evidence used at trial had been obtained in violation of the prisoners' Fourth and Fifth Amendment rights. The district court agreed with the prisoners' constitutional arguments and reduced the *sentences* of both prisoners. The government appealed. This court held that the district court exceeded its "authority and jurisdiction under 28 U.S.C. § 2255." 341 F.2d at 787. After noting the four options available to a district court under § 2255 when it finds a constitutional violation, this court wrote:

> It could be maintained that the district court acted under the fourth alternative by correcting appellees' several sentences. But there was no showing that the original sentence was faulty; therefore, no "correction" of the *sentence* was authorized, absent an illegal *conviction.* The sentence was "modified" or "reduced"—and this was done because of

alleged trial errors uncovered by the district court. If the court's position is sound that error in fact occurred, of a kind that would justify granting of a § 2255 motion, appellees' sentences should have been entirely vacated and set aside, and the prisoners discharged from the service of any time based on the illegal conviction.

> *If the court vacates and sets aside the judgment of conviction, then,· of course, the prisoner must be discharged, or granted a new trial.* If the sentence, as distinguished from the conviction, is illegal, then it may be corrected. But *a judge cannot, without vacating the conviction because of a legal defect found therein, change or modify,* after Rule 35's sixty day period has expired, *a sentence that is itself proper, legal and lawful as a sentence.*

*Id.* at 788 (first paragraph emphasis in original, second paragraph emphasis added; citations omitted).

In this case, too, the original sentence was a proper, legal, and lawful one for a violation of 18 U.S.C. § 924(c). In this case, too, there was a legal defect in the procurement of the conviction. In this case, too, the district court had no option to resentence or correct the sentence; "the prisoner must be discharged, or granted a new trial." *Id.*

What the district court did, erroneously, in *Marchese* is what the majority *requires* the district court to do here. However, we made clear in *Marchese* that the district court lacked authority to resentence the petitioners under § 2255 when their convictions were procured unconstitutionally.[2]

The law of this circuit is equally settled with respect to a post-conviction challenge

---

**2.** *Marchese* is consistent with *United States v. Handa*, 122 F.3d 690 (9th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 869, 139 L.Ed.2d 766 (1998). The analysis in *Handa* simply assumed an intermediate step that *Marchese* discussed expressly, and the procedural facts were materially different. In *Handa*, the defendant had been convicted of *two* crimes after a trial. Unlike in *Marchese*, *one* conviction was valid. After the district court granted Handa's § 2255 motion, it set aside the judgment, vacated the one improper con-

viction, and re-entered the proper conviction. Then, of course, the district court had to impose sentence again.

In other words, "resentencing" *must* occur after a successful § 2255 motion that affects one of several counts of conviction *after trial.* See *Keating v. United States*, 413 F.2d 1028 (9th Cir.1969) (requiring resentencing when one of several counts is vacated in a § 2255 proceeding, and convictions resulted from a jury trial). By contrast, in *Marchese*, no valid

when the unconstitutionally procured conviction results from a plea of guilty, as distinct from a trial. Generally, the appropriate remedy in the situation in which a prisoner entered a defective plea pursuant to a plea agreement is to set aside the plea and grant a new trial.[3] Only by setting aside the plea does the district court have jurisdiction to vacate the conviction.

This court has recognized that, when a prisoner successfully attacks a plea as not knowing and intelligent, the proper remedy is to vacate or set aside the plea and grant a new trial. For example, in *United States v. Barker*, 681 F.2d 589, 592–93 (9th Cir.1982), this court held that the district court could reinstate the prisoner's indictment after she successfully attacked her plea under § 2255 on the ground that her plea was made in the absence of adequate information. When the district court set aside the conviction that had resulted from a plea, there remained but one mechanism for proceeding, that is, going to trial on the original indictment. *Id.* See also *United States v. Gerard*, 491 F.2d 1300, 1306 (9th Cir.1974) ("If, for example, a defendant pleaded guilty to one count and the prosecutor dismissed the others, it should be reasonably apparent that the dismissal was in consideration of the plea; if the defendant succeeded in withdrawing the plea, he should not be able to object to the prosecutor's reviving the other counts.").

So far, I have demonstrated that (1) the usual remedy following a successful collateral attack on a conviction resulting from a trial is a new trial,[4] and (2) the usual remedy following a successful collateral attack on a conviction resulting from a plea is, likewise, a new trial. It remains only to decide whether that usual remedy follows when the plea involves multiple charges.

A defendant's entry of a plea of guilty is a single act that takes place at a single time and place with a single state of mind. A defendant's plea cannot be half voluntary and half involuntary; half knowing and half not knowing; half constitutional and half unconstitutional. A constitutional error that makes the acceptance of the plea improper infects the whole plea. It is either valid or void but cannot be both. This court has recognized the obvious reality that pleas result from bargains and that a plea agreement should be treated as a package. *See Gerard*, 491 F.2d at 1305–06 (recognizing that "[t]he very fact ... that there was a plea suggests the possibility of a plea bargain, or perhaps a consciously lower sentence in consideration of the defendant's not insisting upon trial" and that, in such situations, if the defendant succeeds in withdrawing from the agreement the prosecution is free to revive dismissed counts).[5] If a prisoner success-

---

conviction remained, so the court had no occasion to re-enter a conviction or impose a new sentence based thereon.

The majority (op. at 1160) is incorrect that, under *Marchese*, a successful § 2255 motion always would lead to a new trial. As noted, when the challenged convictions result from a trial, *a new trial would be required (if at all) only as to unconstitutional counts;* the district court re-enters convictions on the constitutional counts and resentences the prisoner.

However, neither *Marchese* nor *Handa* considered the pivotal point in deciding the proper remedy in the present case: the unitary nature of the entry of a plea of guilty to multiple counts. I address that topic in the text below.

**3.** Discharge of the prisoner may be an option in some circumstances. For instance, in this case, had the § 924(c) charge been the only

one available to the government and the only one brought against Barron, he would be entitled to be discharged forthwith.

**4.** See footnote 2, above, for a brief discussion of the remedy following a successful collateral attack on one count among many, when the multiple convictions resulted from a trial.

**5.** This court also has recognized the "package" concept with respect to sentencing. *See United States v. Handa*, 122 F.3d 690, 692 (9th Cir.1997) ("The metaphors of 'package' and 'unbundling' are attractive and appear to reflect the realities of sentencing."), *cert. denied,* —— U.S. ——, 118 S.Ct. 869, 139 L.Ed.2d 766 (1998).

By contrast, as explained in footnote 2, multiple counts of conviction after trial are not a "package."

fully attacks a guilty plea involving multiple charges by arguing that, as to one of the charges, the plea was unknowing and therefore unconstitutional, the remedy still must be retrial.

Understandably, the majority seeks to protect Barron from the ironic consequence of a potentially harsher result after a successful challenge to his § 924(c) conviction. But the majority distorts precedent, as well as the terms of § 2255, to achieve its goal.

I note, initially, that it is routine for a defendant to run the risk that the outcome of a second proceeding will be worse than the outcome of the first. *See, e.g., United States v. Goodwin,* 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) (holding that a worse outcome after exercise of the right to go to trial did not create a presumption of prosecutorial vindictiveness). Moreover, and relatedly, it must be remembered that the prisoner, not the government, files a § 2255 motion. *See Barker,* 681 F.2d at 592–93 (so noting). The reinstatement of Barron's plea of "not guilty" results not from any affirmative act of the government, but from Barron's initiation of a proceeding to void one of the convictions that resulted from his plea of "guilty."

Finally, and most importantly, principles of due process already protect a person in Barron's situation from the fear of prosecutorial vindictiveness. On retrial, a prisoner is protected against receiving an increased punishment solely for having exercised the right to challenge the original conviction under § 2255. Merely returning a prisoner to the position that she occupied before she entered a guilty plea and then successfully challenged the plea (that is, returning her to a "not guilty" plea and a trial on the original indictment) does not enhance the prisoner's risk of punishment, however, and does not imply retaliatory intent. *Barker,* 681 F.2d at 593.

Under the terms of § 2255 and under our precedents, the only option available to the district court is to grant Barron a new trial with respect to the charges that he still faces. Of course, the § 924(c) charge no longer is on the table, and Barron cannot be punished for an alleged violation of that law, no matter what else happens. Whether the case is actually tried on those remaining counts or on additional counts (provided that they are not time-barred and that their revival is not vindictive), or whether the parties enter into a new plea agreement, is not up to the district court to decide in the remedy phase of a § 2255 proceeding. Neither is it up to us, on appeal, to decide prospectively what will happen.

The district court's error here, which the majority compounds, was in going beyond the plain new-trial remedy that § 2255 allows in the circumstances presented. That statute does not give the district court the option to give a prisoner the choice to reinstate an unconstitutional guilty plea. Neither does the statute give the district court authority to decide ahead of time whether the revival of additional charges, not contained in the indictment, would be permitted. Finally, as discussed above, the statute does not give the district court authority to "resentence" in this situation.

To summarize, the mechanism that the law provides for protecting a prisoner in this situation, having chosen to attack a conviction resulting from a plea and having succeeded, is a limited one; on retrial, the prosecutor may not act vindictively. And, in deciding this question of statutory authority, we may not presume that the prosecutor would do so.

## COMMON SENSE COMPELS THE COURT TO RETURN THE PARTIES TO THE STATUS QUO ANTE

Last but not least, common sense dictates the result that I propose. Barron thought that he was guilty of violating 18 U.S.C. § 924(c). So did his lawyer, the prosecutor, and the district judge. On that premise, a plea agreement was struck that disposed of the entire case.

When, years later, *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), established that Barron, the government, and the district court all were mistaken about § 924(c), the district court was faced with the problem of how best to implement § 2255 relief. The district court found that the plea agreement in this case, as in most others, was an integrated, comprehensive, cohesive "package." The court sensibly determined that justice would best be served by rescinding the agreement and returning the parties to the place where they started (minus the § 924(c) charge).

It simply makes sense to let the parties begin again when they all started off on the wrong foot.[6] In this context, that means that the guilty plea should be set aside and the pleas of not guilty reinstated.

Such a result will work to the prisoner's advantage in many cases, particularly if a lot of time has passed and the government is no longer able to proceed, or if the prisoner's bargaining position has improved in other ways. In all events, as discussed above, the rule against prosecutorial vindictiveness protects the prisoner from governmental overreaching in the next round. This approach is entirely consistent with the logic of *Handa* and our other precedents, and it is fair and reasonable.

For the foregoing reasons, I must dissent. I would affirm the district court's decision insofar as it held that Barron's plea of "guilty" was not knowing and intelligent, vacated the judgment, reinstated Barron's pleas of "not guilty," and granted a new trial, and I would reverse the decision insofar as it is inconsistent with the principles stated in this dissenting opinion.

TROTT, Circuit Judge, with whom O'SCANNLAIN and SILVERMAN, Circuit Judges, join, Dissenting and Concurring in Part in the Dissent of GRABER, Circuit Judge:

Not only is the proof of the pudding always in the eating, but so sometimes is the poison. The net result of the majority's faulty approach to resolving Barron's interlocutory problem yields acute systemic distress when applied to other common sets of facts and circumstances. This is what they have accomplished.

Abel is charged with two felony counts. Count I charges X. Count II charges Y. Abel freely and voluntarily pleads guilty to Count II pursuant to a plea bargain. In consideration of the plea, Count I is dismissed. Abel is sentenced to prison for Y.

One week after the time to appeal expires, the Supreme Court decides that the Ninth Circuit's published view of the evidence needed to prove Y is wrong, an occurrence not unheard of. Abel files a motion under 28 U.S.C. § 2255 (1994) attacking his "sentence," or whatever. Abel, of course, is correct—about the validity of his conviction.

Here's the poison: the majority's approach in this case immediately sets Abel free and bars any further action on Count I—even though 1) Abel made no appropriate objection, 2) Abel did not appeal, 3) Abel procedurally defaulted, and 4) the consideration for the agreement has failed—leaving the government and society holding an empty bag.[1]

The district court clearly apprehended this problem, unmasking it with a more graphic example:

Assume that the authorities arrest Jack the Ripper, charge him with the torturous murder of 175 women, and a

---

**6.** Although my view of this case does not rest on contract law, it is interesting to observe that contract principles would lead to the same common-sense result that I suggest. *See Restatement (Second) of Contracts,* §§ 151–152 (describing the doctrine of mutual mistake; a contract is voidable if, at the time the contract was made, both parties had an erroneous, material misunderstanding on which the contract was based).

**1.** This is not the first time we have made this mistake. *See United States v. Sandoval–Lopez,* 122 F.3d 797 (9th Cir.1997).

Grand Jury subsequently issues an indictment. Facing 175 convictions and consequent death penalties, Ripper, on advice of counsel, pleads to one count-the murder of Sally Jones-in return for a guaranteed life sentence and a promise by the prosecutor to dismiss all other charges. Ripper killed so many women he cannot be sure if he really killed Sally; his victims kind of blend together in his mind. However, she died under circumstances virtually identical to his other victims, and he was in the neighborhood at the time of her murder. Therefore, he cheerfully concedes guilt, the prosecutor dismisses the other charges, and Ripper receives the bargained for sentence. Years later, it transpires that a copy-cat actually killed Sally and that Ripper is unquestionably innocent for Sally's murder. Ripper moves for post-conviction relief. In the words of the Supreme Court, he is factually innocent and no one can contest his innocence. The gravamen of Ripper's claim is that there was a mutual mistake of fact. The proper result would be to set aside the plea and reinstate the original charges so that a new agreement can be reached on the basis of the murder of a victim that Ripper actually did kill.

*United States v. Barron,* 940 F.Supp. 1489, 1493 n. 6 (D.Alaska 1996) (citations omitted). This result is incongruous to say the least. The Ripper was never placed in jeopardy on the dismissed counts, and a statute of limitation does not shelter him because the crime is murder, yet he is permanently free because the government remains bound by the unraveled plea agreement even though he is relieved from performing a material part of the agreement as a consequence of his deliberate election to attack it.

The majority seems frozen by certain words Barron uses in attacking his predicament, focusing myopically on his calculated failure to ask for a new trial, a focus that interferes with any reasoned attempt to properly characterize and process his motion. Barron called it an attack on his "conviction," pure and simple. This is not a Kabuki dance or a game. Barron cannot fend off the truth by using the statute as a shield when it carries no such restriction in this context. He should not get what he asks for, but what § 2255 permits as "appropriate." The district court was correct when it said, "By attacking a key component in the sentencing plan envisioned in the plea agreement, Barron is, in effect, attacking the plea agreement itself." 940 F.Supp. at 1493. The Supreme Court has told us that a "trial judge's characterization of his own action cannot control the classification of the action," *United States v. Scott,* 437 U.S. 82, 96, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), yet here we permit a defendant to get away with what a trial judge cannot do—prevail behind the mask of inappropriate nomenclature and labels.

I was under the impression—mistaken, I suppose—that complete frustration of purpose, or impossibility of performance, or failure of consideration—call it what you may—brought on by subsequent or superseding events, such as a change in the law rendering performance illegal, discharges *both* parties to a contract from the duty to perform. We seemed to understand this principle twenty-five years ago in *United States v. Gerard,* 491 F.2d 1300, 1305–06 (9th Cir.1974), when we said that the government should not always be locked into its side of a plea bargain when a defendant succeeds in withdrawing from his, but today the principle escapes us. *See also Santobello v. New York,* 404 U.S. 257, 263 n. 2, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) ("If the state court decides to allow withdrawal of the plea, the petitioner will, of course, plead anew to the original charge on two felony counts."); *United States v. Hillary,* 106 F.3d 1170, 1172 (4th Cir.1997) ("[O]n correcting the error complained of in a § 2255 petition, the defendant may be 'placed in exactly the same position in which he would have been had there been no error in the first instance.'" (quoting *United States v. Silvers,* 90 F.3d 95, 99 (4th Cir.1996))). I note that the government relinquished the opportunity

to pursue Barron as a career offender in return for this plea, and in so doing gave up the possibility of a life sentence.

The district court correctly understood and rejected the windfall Barron was seeking:

The confusion in the cases cited by Barron may be traceable to the fact that where two parties rescind a contract, each is entitled to restitution of any benefit he bestowed on the other party. In this situation, the benefit Barron bestowed is the time he served and will serve. He is entitled to restitution for that amount. He will receive it in the form of credit for time served against any sentence he should ultimately receive. The benefit the government bestowed was the promise not to seek further prosecution arising from facts underlying the indictment and not to seek the enhanced, higher sentence, i.e., 18 U.S.C. § 924(e), which provides a fifteen-year minimum. Because Barron is entitled to be relieved of a major part of the burden of his plea, common sense and justice suggests that he lose the benefits as well.

*United States v. Barron,* 940 F.Supp. at 1493–94.

The Seventh Circuit put it quite well in a *Bailey* [2] setting similar to our present case:

If a multicount sentence is a package-and we think it is-then severing part of the total sentence usually will unbundle it. And we do not think it matters what means are used to bring resentencing proceedings before the district court. Under the sentencing package concept, when a defendant raises a sentencing issue he attacks the bottom line. That Smith's case came before the district court pursuant to a § 2255 petition, rather than a remand from us or by some other means, does not change that fact.

*United States v. Smith,* 103 F.3d 531, 534 (7th Cir.1996). Based on this analysis, that court affirmed the resentencing of a

defendant on two counts not disturbed by *Bailey,* increasing the sentences for those offenses.

The majority's approach seems driven by a questionable sense of rough justice based on an aversion to the possibility that Barron might face a harsher sentence as a reward for his successful challenge. In a similar context, we recently recognized that such a result would not necessarily be inequitable, *see United States v. Handa,* 122 F.3d 690, 692 (9th Cir.1997), when Judge Noonan wrote for the court:

Handa argues earnestly that resentencing under the Guidelines after he has prevailed in setting aside the firearms count of conviction is unfair. That view of the matter goes too far in treating sentencing as a kind of game.... There is, therefore, no constitutional barrier to the district court imposing a sentence, and no unfairness in imposing a sentence that the Guidelines make appropriate for Handa's conduct.

The truth is that because this appeal is interlocutory, we have no idea what appropriate sentence the district court might have determined. Surely Barron would get credit for time served, as the district court indicated; and, as Judge Graber explains, plenty of rules exist to ensure that any new sentence he receives will comport with due process and the law, and that is what matters. *See Alabama v. Smith,* 490 U.S. 794, 799, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989) ("[The] presumption of vindictiveness 'do[es] not apply in every case where a convicted defendant receives a higher sentence on retrial.'" (quoting *Texas v. McCullough,* 475 U.S. 134, 138, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986))) (overruling in part *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)); *Bordenkircher v. Hayes,* 434 U.S. 357, 364–65, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (holding that the Fourteenth Amendment is not implicated when a state prosecutor carries out a threat during plea negotiations to reindict the accused on

**2.** *Bailey v. U.S.,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).

more serious charges if he does not plead guilty to the offense with which he was originally charged); *Blackledge v. Perry,* 417 U.S. 21, 27–28, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) (protecting against vindictive conduct by a prosecutor against a defendant who attacks his conviction on appeal); *Pearce,* 395 U.S. at 723–24, 89 S.Ct. 2072 (imposing constitutional limitations on but not barring the imposition of a harsher sentence after conviction on retrial after a successful post-conviction proceeding), *overruled on other gnds., Smith,* 490 U.S. at 799, 109 S.Ct. 2201.

The majority opinion appears to overlook the implications in this context of longstanding principle that permits a district court to accept a plea of guilty from a defendant who says he is innocent so long as there exists a factual basis for the plea. *North Carolina v. Alford,* 400 U.S. 25, 37–38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). And, as we said in *United States v. Neel,* 547 F.2d 95, 96 (9th Cir.1976) (per curiam), "The court need not be convinced beyond a reasonable doubt that [the] accused is guilty. It need only be convinced that there is sufficient evidence to justify the reaching of such a conclusion." It is also appropriate for the same district court to refuse to permit such a defendant to withdraw his guilty plea even though he pleads legal confusion, repeats his claim of innocence, and asks for fairness and justice. *United States v. Alber,* 56 F.3d 1106, 1111 (9th Cir.1995). The rationale behind the *Alford* rule as expressed by Justice White is plain and simple: "As one state court observed nearly a century ago, '[r]easons other than the fact that he is guilty may induce a defendant to ... plead [guilty] [and][he] must be permitted to judge for himself in this respect.'" *Id.* at 33, 91 S.Ct. 160. The court also embraced the concept that the Constitution is not offended by the acceptance of a plea "even though the evidence before the judge indicated that there was a valid defense." *Id.* at 35, 91 S.Ct. 160.

From this line of cases, I conclude that no constitutional or statutory infirmity exists in the choice the district court gave

Barron: either perform your part of the deal, or start over again. I note that the district court's charitable reasoning in this regard, which echos what Justice White said in *Alford,* was that Barron should not be compelled to withdraw his plea if he did not want to. In fact, the court very well could have refrained from the option of sticking with the deal and simply said, "This is what happens when we grant your motion." The choice may not be easy, but it was necessarily occasioned by Barron's criminal conduct and the change in the law. In fact, the option the majority does not like—serve out your sentence—is a boon to Barron in the light of (1) the Probation Officer's conclusion that Barron was an armed career offender facing 360 months to life, and (2) the *stipulated* factual basis for the convictions:

In its case-in-chief the United States would show that on April 18, 1986, [appellant] was convicted in the Superior Court for the State of Alaska at Fairbanks of Misconduct Involving a Controlled Substance in violation of A.S. 11.71.030(a)(1). Plaintiff would obtain judicial notice of the fact that this offense is punishable by imprisonment for a term in excess of one year; the evidence would show that [appellant] was actually sentenced to four years imprisonment, this being a presumptive sentence under state law.

The evidence would further show that on December 11, 1991, a state search warrant was executed at [appellant's] residence in North Pole, Alaska. Found in a safe in his bedroom was approximately twenty-one (21) ounces of cocaine, one .380 caliber Bernardelli semiautomatic handgun, and approximately $34,000.00 in cash. A search of [appellant] himself incident to arrest also disclosed cocaine, $1977 in cash in his vest pocket, and $900 in "buy" money used by undercover law enforcement in the pocket of his jeans. Finally, the evidence would also show that the search of [appellant's] residence additionally disclosed packaging materials, cutting

agents and drug paraphernalia as further proof of [appellant's] intent to engage in drug trafficking.

Finally, and with all respect to my colleagues, I must reluctantly point out that the majority opinion treats the government's arguments with what comes across as scorn, using wholly inappropriate language such as:

> Stripped of the contract analogy, the government's position is untenable. As a initial matter the government could not have said, "you are innocent of using a gun, but if you plead to it, we'll give up charging you for your career offenses." Unless the government can do the same thing now by invoking contract principles, its case is no better.

What? The government's case is no better than using threats to force "innocent" people to plead guilty? The government has never even remotely suggested such a thing. What the government did say was that Barron might "plead anew to a section 924(c)(1) offense on the basis of facts known to him that would support a conviction under *Bailey*." The majority's passage unfairly forces words into the government's mouth the government has *never* uttered. It then twists the government's arguments into a strawman and batters it to pieces. The government has only argued that Barron's plea agreement was predicated on a mutual mistake of law and should be vacated because Barron, who has escaped 60 months of imprisonment he bargained for in lieu of additional felony charges and a heavier sentence, cannot be allowed to have his cake and eat it, too. The government seeks only to make Barron pay for what he did. To support their respectable argument, the government cites *United States v. Smith*, 103 F.3d 531, 533–35 (7th Cir.1996) (district court has authority to restructure defendant's entire sentencing package where *Bailey* has voided one of three counts of conviction); *United States v. Friend*, 101 F.3d 557, 558–59 (8th Cir.1996) (remanding for possible sentence enhancement under Guidelines § 2D1.1(b)(1) after Section 924(c)(1) conviction invalidated by *Bailey* ); *United States v. Valle*, 72 F.3d 210, 217–18 (1st Cir.1995) (same); *United States v. Pollard*, 72 F.3d 66, 68–69 (7th Cir.1995) (same).

What seems completely to escape the majority is that *we*, the judges of the Ninth Circuit, are the ones responsible for Barron's plea in 1992 to the now-troublesome count, because *we* held in 1991 in *United States v. Torres–Rodriguez*, 930 F.2d 1375, 1385 (9th Cir.1991)—a year before the plea—that mere possession of a firearm was sufficient to satisfy § 924(c). Are *we* chargeable with herding "innocent" defendants to prison, or has the noble fiction of "Barron was never guilty" now run amok? If we are not so chargeable, then why is it necessary or useful at the end of the opinion to wrap the matter in "the fundamental principle that it is never just to punish a man or woman for an innocent act?" This concept has nothing to do with this case, and it is a shot the government does not deserve.

The majority says also that *Bailey* "was not a favorable intervening change in the law." It wasn't? Then how does the majority explain what the Supreme Court did in *Bailey* to *Torres–Rodriguez?* No matter how one chooses fictionally to label the process, *Bailey* changed the law in this circuit, law relied on in 1992 by the government, the district court, *and* Barron when this plea was entered. We told them what the law was, and they followed our lead. In passing, I would note that *Torres–Rodriguez* did not plow new ground. In fact, in it we said that the result was "supported by *Stewart*, our leading decision on section 924(c)(1)." *Torres–Rodriguez*, 930 F.2d at 1385 (citing *United States v. Stewart*, 779 F.2d 538, 540 (9th Cir.1985)). The author of *Stewart* was no lesser a judicial luminary than now-Justice Anthony Kennedy, and I doubt he thought he was causing "innocent" people to be sent to jail when he wrote it, no more than did the panel who published *Torres–Rodriguez*.

Moreover, the majority denies the government the opportunity to argue under

*Bousley v. United States,* 523 U.S. 614, ——, 118 S.Ct. 1604, 1613, 140 L.Ed.2d 828 (1998) that Barron procedurally defaulted on this claim by failing to make it the subject of a direct appeal. The majority's rationale is that the government did not rely on this ground in the district court. What the majority opinion overlooks is (1) that the district court ruled that by not appealing, Barron had forfeited any defense based upon a favorable intervening change in the law, and (2) that *Bousley* is a new case that corrected *our* previous misunderstanding of the rules.

*Bousley* sends two messages the majority fails to acknowledge. First " 'the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas.' " *Id.* at ——, 118 S.Ct. at 1610 (quoting *United States v. Timmreck,* 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979)). Second, "[i]n cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." *Id.* at ——, 118 S.Ct. at 1612. Accordingly, I would analyze this case through the lens of procedural default as outlined by *Bousley.* The district court recognized this problem, and so should we. Just as Bousley procedurally defaulted, so has Barron, period. Barron is not "actually innocent." The majority faults the government for not arguing *Bousley* before *Bousley,* but they let Barron off the hook for not arguing *Bailey* before *Bailey.*

We have roared like hell when agencies like the INS refuse to follow our law, even when they point out that other circuits have different rules. Yet here, the majority seems to say that by following our lead the district court traffics in the conviction of the innocent.

Accordingly, I concur in most of Judge Graber's well-reasoned dissent. I suppose all plea agreements will now contain a revivor clause as to dismissed counts, hanging a "threat" over a defendant's head before any possible appeal; but to what purpose if an attack by a defendant crafted without a request for a new trial blocks any access by the court to the real issue. Barron may live in North Pole, but we are Santa Claus.