

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-10-2007

# McKeever v. Warden Graterford

Precedential or Non-Precedential: Precedential

Docket No. 05-2492

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"McKeever v. Warden Graterford" (2007). *2007 Decisions*. Paper 1034.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1034

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-2492

VICTOR MCKEEVER,

Appellant

v.

WARDEN SCI-GRATERFORD;
ATTORNEY GENERAL,
COMMONWEALTH OF PENNSYLVANIA;
DISTRICT ATTORNEY, ERIE COUNTY

On Appeal from the Judgment of the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 04-cv-03567)
District Judge: Honorable Paul S. Diamond

Argued: February 1, 2007

Before: BARRY, ROTH, *Circuit Judges*, and
IRENAS,[*] *Senior District Judge*.

(Filed: May 10, 2007)

---

[*] Honorable Joseph E. Irenas, Senior United States District Judge for the District of New Jersey, sitting by designation.

1

Gene C. Schaerr, Esq. (Argued)
Winston & Strawn LLP
1700 K St., NW
Washington, D.C. 20006

Counsel for Appellant

Andrea F. McKenna, Esq. (Argued)
Office of Attorney General of Pennsylvania
Strawberry Square, 16th Floor
Harrisburg, PA   17120

Counsel for Appellees

_____

OPINION OF THE COURT
_____

IRENAS, Senior United States District Judge.

Appellant Victor McKeever pleaded guilty in 1995 to drug-related charges, including two counts arising under the Pennsylvania Corrupt Organizations Act ("PACOA"), 18 Pa. C.S.A. § 911(b)(3).  He was sentenced to 15-42 years' imprisonment. In 1996, the Supreme Court of  Pennsylvania held that PACOA does not apply to individuals operating wholly illegitimate businesses. *Commonwealth v. Besch,* 674 A.2d 655 (Pa. 1996).  McKeever, falling within that class of persons, filed a *habeas corpus* petition on July 28, 2004, pursuant to 28 U.S.C. § 2254, in the Eastern District of Pennsylvania.  He now appeals the District Court's Order granting his writ of *habeas corpus* and staying the writ for 180 days so that the Commonwealth of Pennsylvania could vacate McKeever's PACOA convictions and resentence him or, alternatively,  release him from incarceration. For the reasons set forth below, we will affirm.

I.

The District Court had jurisdiction over McKeever's *habeas* petition under 28 U.S.C. § 2254.  We have jurisdiction over his appeal pursuant to 28 U.S.C. §§ 1291, 2253.  Because

the District Court did not hold an evidentiary hearing on McKeever's sentencing claims, we review its legal conclusions *de novo*. *See Outten v. Kearney*, 464 F.3d 401, 413 (3d Cir. 2006); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001).

## II.

On January 13, 1995, the Commonwealth of Pennsylvania filed an 11-count Information against McKeever arising out of his possession and delivery of heroin. (16).[1] He was charged with six counts of delivery of a controlled substance, one count of dealing in proceeds of unlawful activities, one count of criminal conspiracy to violate the state Drug Act, one count of possession of a controlled substance, and two counts of violating the Pennsylvania anti-racketeering statute, PACOA. McKeever pleaded guilty on July 24, 1995, to ten counts in exchange for the Commonwealth's promise not to object to a sentencing scheme set forth in the agreement.[2] (21). Under the scheme, McKeever's two PACOA counts merged with each other, and were made concurrent with one of the six drug delivery counts. They did not have any effect on the actual length of his sentence. The drug delivery counts were made consecutive with each other, and concurrent with the criminal conspiracy and drug dealing charges. [3]

---

[1] The referenced page numbers correspond to Appellant's Appendix.

[2] At the time of McKeever's plea, the Commonwealth withdrew Count XI, possession of a controlled substance. (49).

[3] The details of the sentencing scheme as set forth in the plea agreement are as follows: Count I (dealing in proceeds of unlawful activities): 1-5 years concurrent with Count V; Count II (PACOA): 1-7 years merged with Count III and concurrent with Count V; Count III (PACOA): 1-7 years merged with Count II and concurrent with Count V; Count IV (criminal conspiracy): 2-7 years concurrent with Count V; Count V (delivery of a controlled substance): 2-7 years consecutive to McKeever's then current sentence; Count VI (delivery of a controlled substance): 2-7 years consecutive to Count V; Count VII (delivery of a controlled

3

In 1996, the Supreme Court of Pennsylvania held that PACOA did not apply to individuals who operated wholly illegitimate businesses. *Commonwealth v. Besch,* 674 A.2d 655 (Pa. 1996). Later that year, the Pennsylvania legislature, responding to this interpretation, amended PACOA to apply to businesses with wholly illegitimate operations. (34-40); 18 Pa. C.S.A. § 911 (1997). In 1999, however, the Supreme Court of Pennsylvania held that the amended act was to be applied prospectively only. *Commonwealth v. Shaffer,* 734 A.2d 840, 843 (Pa. 1999).

McKeever, on January 23, 2003, collaterally challenged his sentence under the Pennsylvania Post Conviction Relief Act ("PCRA") asserting: (1) that his guilty plea was based upon mutual mistake of fact; (2) that he was not liable under PACOA because he operated a wholly illegitimate business; and (3) that his guilty plea should be rescinded.

The Court of Common Pleas, Erie County, dismissed the PCRA petition as untimely and not subject to any exceptions under 42 Pa. C.S.A. § 9545(b)(1). (80). It held that McKeever's petition would have been timely if filed by January 16, 1997, one year from the effective date of the amendments to PACOA.[4] Because, however, it was filed on January 21, 2003, more than six years from that date, it was untimely. (82-83). The Superior Court of Pennsylvania affirmed. (87).

---

substance): 3-7 years consecutive to Count VI; Count VIII (delivery of a controlled substance): 2-7 years consecutive to Count VII; Count IX (delivery of a controlled substance): 3-7 years consecutive to Count VIII; Count X (delivery of a controlled substance): 3-7 years consecutive to Count IX.

[4] Pursuant to 42 Pa. C.S.A. § 9545, a PCRA petition must be filed within one year of the date the judgment becomes final. Under a proviso of the 1995 amendments to the PCRA, if the judgment of sentence becomes final before January 1996, the effective date of the amendments, a petitioner has one year from the effective date of the act to file a first PCRA petition. McKeever qualified for this proviso, but failed to file his petition by January 16, 1997. (88-89).

On July 28, 2004, McKeever filed a *habeas corpus* petition, pursuant to 28 U.S.C. § 2254, in the Eastern District of Pennsylvania. He alleged that under Pennsylvania statutory and case law, he was actually innocent of the two PACOA counts included in his plea agreement. (91-95). Magistrate Judge Hart issued a Report and Recommendation finding that the District Court had jurisdiction to hear the case, that McKeever should be excused from exhausting all state court remedies, that his petition was not time-barred, and that he was actually innocent of the two PACOA counts.[5] (126-32). Magistrate Judge Hart recommended that the District Court grant McKeever's petition and order the state court to vacate the two PACOA convictions and resentence McKeever accordingly. (132). McKeever objected to the Report and Recommendation of Magistrate Judge Hart, and argued that the appropriate remedy was the rescission of the 1995 plea agreement. (133).

On March 23, 2005, Judge Diamond issued an Order, with an attached Memorandum, adopting the Report and Recommendation by Magistrate Judge Hart, granting the writ of *habeas corpus* relief, and staying execution of the writ for 180 days to permit the Commonwealth to fashion the appropriate remedy. (3-4). McKeever moved to alter or amend the Order on the ground that the Commonwealth did not attach the District Court's memorandum when filing a Motion for Resentencing Hearing in the State Court on March 29, 2005. He asserted that in its motion, the Commonwealth misrepresented the District Court's Order, in that the Commonwealth stated that the District Court ordered re-sentencing, rather than leaving the remedy to the state's discretion. (159-161). The District Court, on April 11, 2005, denied McKeever's motion, noting again that it does not have the power to order the state to provide a specific remedy. (156). McKeever now appeals the District Court's Order.

---

[5] The Third Circuit has not yet decided whether a claim of actual innocence may equitably toll the one-year filing period under 28 U.S.C. § 2244(d). Because the Commonwealth conceded this issue, it is not before the Court at this time.

On April 26, 2005, McKeever was resentenced in the Court of Common Pleas of Erie County to an aggregate term of 15 to 42 years in prison. The Court of Common Pleas denied various motions filed prior to re-sentencing, including a motion to withdraw his guilty plea.[6] (Appellee's App'x, Doc. A). McKeever appealed, and the Superior Court affirmed. (Appellee's App'x, Doc. B). McKeever then filed a petition for allowance of appeal, which was denied by the Supreme Court of Pennsylvania on September 13, 2006. *Commonwealth v. McKeever*, 907 A.2d 1101 (Pa. 2006).

III.

McKeever contends that his guilty plea violated the Due Process Clause, U.S. Const. Amend. 14, because it was not knowing and voluntary in light of the fact that, based upon a subsequent judicial decision, he was actually innocent of the two PACOA counts to which he pled guilty, and that the appropriate remedy is rescission of his guilty plea in its entirety.

First, we note that the District Court was correct in granting McKeever's writ of *habeas corpus* but leaving the precise remedy in the hands of the Commonwealth. "Both the historic nature of the writ and principles of federalism preclude a federal court's direct interference with a state court's conduct of state litigation. . . . A *habeas* court does not have power to directly intervene in the process of the tribunal which has incorrectly subjected the petitioner to the custody of the respondent official." *Barry v. Brower*, 864 F.2d 294, 300-01 (3d Cir. 1988) (internal citation omitted); *see also, Dunn v. Colleran*, 247 F.3d 450, 462 (3d Cir. 2001); *Dickerson v. Vaughn*, 90 F.3d 87, 92 (3d Cir. 1996)("[A] state should be given the opportunity to correct its own errors and federal remedies should be designed

---

[6] In an opinion written by the Court of Common Pleas on June 29, 2005, the Court noted that McKeever's initial post-sentence motion on January 23, 2003, to withdraw his plea was untimely, and that even if it were timely, it should not now be granted because the plea was knowing, intelligent, and voluntary, and thus McKeever did not suffer prejudice as a result of the initial denial of this motion. (Appellee's App'x, 18-23).

6

to enable state courts to fulfill their constitutional obligations to the defendant."); *Heiser v. Ryan*, 15 F.3d 299, 306 (3d Cir. 1994).

In granting the writ of *habeas corpus,* the District Court left the choice of remedy to the state court. (11-13). McKeever argues that the District Court erroneously failed to order the state court to vacate his guilty plea in its entirety and either retry or release him. He contends that his guilty plea should be vacated in its entirety because it was premised on the belief of both parties that he was guilty of the two PACOA counts and was, therefore, neither voluntarily or intelligently made. However, *Brady v. United States*, 397 U.S. 742 (1970), held that a plea need not be vacated due to a subsequent change in the statute upon which only part of the plea was premised.

> [J]udgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, *a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise.*

*Brady*, 397 U.S. at 756-57 (internal citation omitted)(emphasis added). We decline to adopt a rule that renders a multi-count plea agreement *per se* invalid when a subsequent change in the law renders a defendant innocent of some, but not all, of the counts therein and reject the argument that such a plea could never be entered by a defendant voluntarily and intelligently.

7

McKeever suggests that because the plea agreement was based upon a mutual mistake, it should be rescinded. Ordinary contract law principles are applicable to disputes over plea agreements, provided that the defendant is also afforded the protections of due process. *See United States v. Floyd*, 428 F.3d 513, 516 (3d Cir. 2005); *see also, United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005); *United States v. Brunetti*, 376 F.3d 93, 95-96 (2d Cir. 2004) (per curiam); *United States v. Sar-Avi*, 255 F.3d 1163, 1166-67 (9th Cir. 2001); *United States v. Giorgi*, 840 F.2d 1022, 1025 (1st Cir. 1988). The Restatement (Second) of Contracts § 152 (1981) defines mutual mistake as follows:

> (1) Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a *material effect* on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154.
> (2) In determining whether the mistake has a material effect on the agreed exchange of performances, account is taken of any relief by way of reformation, restitution, or otherwise.

*Id.* (emphasis added).

First, this Court notes that contrary to McKeever's contention, the mistake here was one of law, not fact. Moreover, the mistake was not material. McKeever admits that had it not been for the mistake, he "may, or may not, have pleaded guilty rather than risk trial." (Appellant's Brief, 8). Pursuant to the Restatement (Second) of Contracts § 152 cmt. c (1981), "[i]t is not enough for [a party] to prove that he would not have made the contract had it not been for the mistake. He must show that the resulting imbalance in the agreed upon exchange is so severe that he can not fairly be required to carry it out." Based upon this standard and McKeever's own admission, the mistake of law clearly did not have a "material effect" on the plea agreement.

8

In *Brady,* the Supreme Court refused to vacate a plea agreement on the grounds that part of the statute to which petitioner pled was later deemed unconstitutional, despite the fact that petitioner may have relied upon it in informing his bargaining position. "[E]ven if we assume that Brady would not have pleaded guilty except for the death penalty provision of [the statute], this assumption merely identifies the penalty provision as a 'but for' cause of his plea. That the statute caused the plea in this sense does not necessarily prove that the plea was coerced and invalid as an involuntary act." *Brady*, 397 U.S. at 750.[7] Thus, even if the PACOA counts informed McKeever's bargaining position, and were the "but for" cause of his decision to plead guilty, this does not rise to the level of materiality necessary to avoid the agreement in its entirety.

This conclusion is supported by the record, which reflects that the heart of McKeever's plea agreement was not the PACOA charges, but rather the drug trafficking charges. In fact, the bargain struck in the plea agreement resulted in a minimum sentence of fifteen years and a maximum of forty-two years. When resentencing, the Court sentenced McKeever to the same aggregate scheme, despite the removal of the PACOA counts. This occurred because, in the original sentencing scheme, the two PACOA counts were merged with each other and concurrent with a count for delivery of a controlled substance. They carried no mandatory minimum sentence, unlike each of Counts V through X, the delivery of a controlled substance counts. *See* 18 Pa. C.S.A. § 7508(a)(7)(i) and (ii). Nor did the PACOA counts

---

[7] The dissent attempts to distinguish *Brady*'s strong holding by suggesting that it can be marginalized because it did not involve a situation where, due to a subsequent change in the law, defendant was actually innocent of a law to which he pleaded guilty. Rather, it involved a subsequent determination that a law was invalid because it allowed defendant to avoid the death penalty by pleading guilty. In *Brady,* however, defendant's decision to plead guilty was based, at least in part, on the opportunity to avoid the death penalty. His failure to anticipate the change in law clearly had a much greater impact than it did on McKeever, where the PACOA counts neither impacted the length of his sentence nor were a central component of the bargain.

carry a higher maximum sentence or a greater mandatory fine than Count I, which charged McKeever with dealing in the proceeds of unlawful activities. Moreover, the sentencing scheme and the nature of the crimes themselves make it clear that the prosecution of McKeever was fundamentally based upon his delivery of heroin.

The dissent assumes that the parties were mistaken as to the reach of PACOA at the time the plea was entered, and would require that the plea be voidable. The premise of the dissent's argument, however, is flawed. First, at the time the plea agreement was made, PACOA did, in fact, cover McKeever's conduct. No party was mistaken in his understanding of this. The law did not change until after McKeever pled and was sentenced.

In support of its theory, the dissent relies on *United States v. Bradley,* 381 F.3d 641 (7th Cir. 2004). In *Bradley,* defendant pled guilty to both counts of his two-count indictment. The Court of Appeals held that there was a mutual mistake when "no one understood an essential element of the crime with which Mr. Bradley was charged" *at the time* of the plea agreement. *Id.* at 647. Similarly, the dicta in *Bousley v. United States*, 523 U.S. 614 (1998), cited by the dissent, indicates that when a court accepts a guilty plea from a defendant to a crime, the elements of which neither he, his counsel, nor the court correctly understood, the plea would violate the Due Process Clause. *Id.* at 618-19. Neither of these decisions address the due process implications of vacating counts based upon a subsequent change in the law that rendered the defendant actually innocent of those counts, and holding a defendant to his admissions of guilt on other properly charged and correctly understood counts for which there is no evidence of actual innocence.

Second, the dissent relies upon its understanding that all pleas are packages, and thus an infirmity as to part of the plea causes the entire plea to become voidable. This understanding is erroneous both as to the contours of the sentencing package doctrine as well as to the circumstances of McKeever's plea agreement. The sentencing package doctrine generally applies to sentences with interdependent, consecutive counts, and not to

10

concurrent sentences. *See United States v. Murray,* 144 F.3d 270, 273-74 n.4 (3d Cir. 1998); *United States v. Davis,* 112 F.3d 118, 123 (3d Cir. 1997). Here, the precise agreement reached also demonstrates that the two PACOA counts on which McKeever was sentenced were independent of the other counts. The Court of Common Pleas sentenced McKeever separately on all counts. (55-76). The two PACOA counts were concurrent with one of the six drug delivery counts, which were consecutive with each other. The PACOA counts and the drug delivery counts clearly were not interdependent.

Even assuming, however, that Mckeever's sentence was a package, it is within the bounds of due process to resentence a defendant on remaining counts after some, but not all counts, are vacated. The decision in *United States v. Barron,* 172 F.3d 1153, 1158 (9th Cir. 1999)(en banc), is squarely on point. Barron pled guilty to three counts: Count I, felon in possession of a firearm, carrying a maximum of ten years, or a minimum of fifteen years' imprisonment if defendant had previously engaged in certain criminal conduct; Count II, possession of twenty-one ounces of cocaine with intent to distribute, with a sentence range of ten years to life imprisonment; and Count III, possession of a firearm in relation to drug trafficking pursuant to 18 U.S.C. § 924(c)(1), with a sentence of five years consecutive to any term of imprisonment imposed. Three years after he was sentenced, the Supreme Court decided *Bailey v. United States,* 516 U.S. 137 (1995), which held that use of a gun under § 924(c)(1) requires "active employment" of the gun in relation to the drug offense. Because Barron admitted to concealing a gun, but not to using the gun, the parties agreed that the facts did not justify his conviction on Count III.

Barron filed a § 2255 petition seeking *habeas* relief. The district court held that "Barron could have the plea agreement set aside on the ground that it was not knowing and voluntary because of ignorance of the law declared by *Bailey.*" *Barron,* 172 F.3d at 1156. A three-judge panel of the Ninth Circuit first affirmed,[8] but was then reversed in an *en banc* decision which held that "the guilty plea to criminal acts can remain in force

---

[8] *United States v. Barron,* 127 F.3d 890 (9th Cir. 1997).

11

even as the sentence imposed upon an innocent act is set aside. . . . [There is no] reason for reducing § 2255 remedies to two (discharge or new trial) when a plea agreement is in force. . . . [T]he district court can distinguish the convictions that are still valid, reinstate the judgment, and resentence." *Id.* at 1158. It further held that "a collateral challenge to the legality of a particular count of conviction does not constitute a breach of or withdrawal from a plea agreement, and . . . the remainder of the plea agreement remains in effect." *Id.* at 1160. Similarly, in *United States v. Watkins,* 147 F.3d 1294, 1298 (11th Cir. 1998), the court found no due process violation when defendant collaterally attacked one count of a package sentence imposed pursuant to a plea agreement, and the district court vacated that count and resentenced defendant on the remaining counts.

The dissent's reliance upon *United States v. Lewis,* 138 F.3d 840 (10th Cir. 1998), is misplaced. The plea in *Lewis* only covered one count. Thus, the issue of the constitutionality of vacating one count in a multi-count plea agreement simply was not before the court. Moreover, the *Lewis* court relied upon language in the *Barron* panel opinion, which had not yet been reversed *en banc. Lewis,* 138 F.3d at 841-43.

Contrary to McKeever's contention, rescission of the entire plea agreement was not the only appropriate remedy. This Court, in *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 219 (3d Cir. 2003), cited to the Restatement (First) of Contracts § 603 (1932) for the proposition that a "bargain that is illegal only because of a promise or a provision for a condition, disregard of which will not defeat the *primary purpose* of the bargain, can be enforced with the omission of the illegal portion by a party to the bargain who is not guilty of serious moral turpitude unless this result is prohibited by statute." The Restatement (Second) of Contracts § 184 (1981), similarly states, "[i]f less than all of an agreement is unenforceable under the rule stated in § 178, a court may nevertheless enforce the rest of the agreement in favor of a party who did not engage in serious misconduct if the performance as to which the agreement is unenforceable is not an essential part of the agreed exchange." Because we hold that the PACOA charges were not an essential part of the agreed exchange, rescission of the plea is not necessary and the Commonwealth

12

did not err in vacating the two PACOA counts and resentencing McKeever based upon the remainder of the plea agreement.[9]

Furthermore, the mistake here - a later change in law that was beneficial to the Defendant - is not of the type that is *per se* sufficient for avoidance of the plea agreement, as the allocation of risk of future changes is part of the bargaining process. *See Bownes,* 405 F.3d at 636 ("In a contract (and equally in a plea agreement) one binds oneself to do something that someone else wants, in exchange for some benefit to oneself. By binding oneself one assumes the risk of future changes in circumstances in light of which one's bargain may prove to have been a bad one. That is the risk inherent in all contracts; they limit the parties' ability to take advantage of what may happen over the period in which the contract is in effect."). Accordingly, in the circumstances of this case, vacating McKeever's plea agreement was not the only legally permissible remedy.[10]

## IV.

We hold that the District Court did not err in granting McKeever's writ of *habeas corpus* and leaving the remedy to the Commonwealth.[11] The Order of the District Court will be

---

[9] We also note that many of the cases the dissent relies upon involve *habeas* petitions that arise out of federal prosecutions pursuant to 28 U.S.C. § 2255. Such petitions do not implicate the federalism and comity issues of *habeas* petitions under 28 U.S.C. § 2254 that, in this case, support a remand to the state judge for determination of remedy.

[10] There may be a case in which events subsequent to a multi-count plea render the defendant innocent of a count which is so central to the bargain between the parties that vacating the plea is the only constitutionally permitted remedy. This is not such a case.

[11] We are not determining the validity of the Commonwealth's resentencing on remand. Rather, this ruling is limited to the validity of the District Court's order remanding the case to state court for a determination of the appropriate remedy.

13

affirmed.

_____

*MCKEEVER v. WARDEN SCI GRATERFORD, et al.*

No. 05-2492

_____

**ROTH**, <u>Circuit Judge</u>, <u>Dissenting</u>:

I respectfully dissent. I believe that the plea agreement here, negotiated and entered into on the basis of a shared misapprehension as to the reach of one of the statutes under which the defendant is charged, is voidable as based on a material mutual mistake.

## I.    **Facts**

Because one aspect of the procedural history in this case is important to this dissent and is not sufficiently set out in the majority's recitation of the facts, I briefly summarize it here.  The District Court found that McKeever's conviction of the two PACOA counts violated McKeever's due process rights because PACOA, as later interpreted by the Supreme Court of Pennsylvania, did not reach wholly illegal organizations such as the one in which McKeever participated.  The District Court  then issued a writ of habeas corpus but stayed the writ for 180 days "to permit the Commonwealth to vacate the Petitioner's convictions related to the Pennsylvania Corrupt Organizations Statute and resentence him accordingly."  Order Adopting the Magistrate Judge's Report and Recommendation, *McKeever v. Warden SCI Graterford*, No. 04-3567 (E.D. Pa. Mar. 23, 2005).[12]

_____

[12] This order identified as the remedy for the constitutional violation the vacatur of the two PACOA convictions and resentencing.  This language is inconsistent with portions of the District Court's opinion, which suggest that the District Court would leave the choice of remedy – either vacatur of the PACOA

14

Subsequently, the state courts took several actions on McKeever's case.  First, on April 26, 2005, the Erie County Court of Common Pleas denied as untimely McKeever's motion to withdraw his guilty plea.  The court then vacated the PACOA convictions and resentenced McKeever to the same aggregate sentence as before.  *Com. v. McKeever*, No. 2934 of 1994, slip.op. at 8 (Erie Ct. of Common Pleas June 29, 2005).  In its later-filed opinion, the court reasoned that the motion was untimely; the plea was knowing, intelligent, and voluntary; and "if the federal court had intended for this [Court of Common Pleas] to permit Defendant to withdraw his guilty plea, that court would have so indicated in its Order." *Id.* at 3, 18.  In January, 2006, the Superior Court affirmed, holding that the motion to withdraw the guilty plea "relate[d], directly and exclusively, to Appellant's PACOA convictions" and was therefore moot.[13]  *Com. v. McKeever*, 895 A.2d 692 (Table), No. 880 WDA 2005, slip op. at 3 (Pa. Super. Ct. Jan. 27, 2006).

## II.    The Sufficiency of the Remedy

The majority concluded that the District Court "was correct in granting McKeever's writ of *habeas corpus* but leaving the precise remedy in the hands of the Commonwealth."   I do not agree that offering the state court the choice of fashioning a remedy

---

convictions or recission of the plea – to the Pennsylvania state courts since they were "in a better position to decide whether a 'mutual mistake' denied Petitioner of [sic] the 'benefit' of his 'bargain' with the prosecution, and the legal significance, if any, of such a denial." *McKeever v. Graterford*, No. 04-3567, 2005 WL 696893, at *4 (E.D. Pa. Mar. 23, 2005).  We note that in its discussion about permitting the state court to choose the applicable remedy, the District Court cited cases where the basis for habeas relief was breach of the plea agreement, not a plea to activities which did not constitute a criminal offense.  In such a situation, there may be more than one constitutionally sufficient remedy. *See Santobello v. New York*, 404 U.S. 257, 263 (1971); *Dunn v. Colleran*, 247 F.3d 450 (3d Cir. 2001).

[13] McKeever had moved for other forms of relief; none of the other motions was granted or is relevant here.

is the proper solution because I find only one remedy – that of release unless McKeever is allowed to withdraw the entire plea agreement – is constitutionally sufficient.

Moreover, in its Order, the District Court – as the Court of Common Pleas observed – did not present the state courts with a choice of several sufficient constitutional remedies that would avoid McKeever's release. Rather, the Order suspended the granting of the writ on the condition that the state courts implement one specific remedy – vacatur of the PACOA counts. Contrary to the majority's view, I believe that a district court has the authority to issue a conditional writ as long as the condition offered embodies a remedy sufficient to cure the constitutional error. Only where more than one remedy is sufficient to cure that error, should the state court be permitted to choose the remedy.

The precedent invoked by the majority is not to the contrary. The majority cites *Barry v. Brower* for the proposition that "[a] *habeas* court does not have the power to directly intervene in the process of the tribunal which has incorrectly subjected the petitioner to the custody of the respondent official." 864 F.3d 294, 301 (3d Cir. 1988) (internal citation omitted). But *Barry* unremarkably stands for the proposition that a federal court's power is limited to ordering a prisoner released *unless* the state court takes certain actions and does not extend to directing the state to do anything. *Barry*, however, does not hold that a federal court is without power to say *which* actions will be sufficient to correct a constitutional infirmity and avoid the prisoner's release. Indeed, in *Barry* we held that the District Court did not have the power to direct the state to reinstate a prisoner's appeal but should instead have issued a conditional writ ordering him released unless the state court, within a certain time period, "enter[ed] an order reinstating [the prisoner's] appeal and permitting the public defender to represent him in that appeal." *Id.* at 301. Similarly, in *Henderson v. Frank*, 155 F.3d 159 (3d Cir. 1998), we specified that "conditional writs must be tailored to ensure that all constitutional defects will be cured by the satisfaction of that condition." *Id.* at 168.[14]

---

[14] As mentioned above, where more than one remedy would be adequate to correct the conditional defect, it is appropriate for

16

Thus, the District Court was entirely within its authority in issuing a conditional writ of habeas corpus specifying that McKeever should be released unless the state courts adopted a specific remedy to correct the constitutional infirmity. Its error was not in naming a remedy, but in naming the wrong one because the remedy it identified was not sufficient. The court should have ordered McKeever released unless he was allowed to rescind the entire plea agreement.

### III.     Effect of Mutual Mistake on a Guilty Plea

This is not the first time that federal courts have been confronted with the question presented in this case – the effect on a guilty plea of a shared misapprehension as to the reach of a criminal statute. Rather, both the Supreme Court and several sister circuits faced this issue following the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137 (1995), which significantly narrowed the reach of the provision prohibiting the use of firearms in relation to the commission of a drug crime, 18 U.S.C. § 924(c). These decisions put forward two principles: first, where the parties involved are mistaken in the shared belief that a certain conduct is reached by a statute, the guilty plea to the counts arising under the specific statute is constitutionally invalid because the plea could not have been knowing or intelligent; and second, because a plea agreement comes about as a "package," a misapprehension shared by the defendant, his counsel, the prosecutor, and the trial court as to the reach of the statute constitutes a mutual mistake with material effects on the bargain, so that the entire plea agreement

_____

the federal court to offer the state a choice between releasing the petitioner and adopting one of the several remedies identified as sufficient. *See Dunn*, 247 F.3d 450 (where a plea agreement was breached by the prosecution, breach could be remedied either by ordering specific performance of the agreement or by voiding it); *Dickerson v. Vaughn*, 90 F.3d 87, 92 (3d Cir. 1996) (remanding with directions that petitioners be released unless the Commonwealth of Pennsylvania adopted one of two remedies either of which could cure the constitutional infirmity). However, as discussed below, I conclude that only one remedy is appropriate here.

17

becomes voidable at the petitioner's request and the parties are returned to their pre-plea positions.[15]

In *Bousley v. United States*, 523 U.S. 614 (1998), the Supreme Court held that, if a plea is to counts arising under a statute later found not to reach the defendant's conduct, that plea is constitutionally invalid. In *Bousley*, the petitioner challenged his plea of guilty to "using" a firearm in violation of 18 U.S.C. § 924(c)(1). The petitioner argued that because the District Court failed to inform him at the time of his plea that the statute required "active employment of the firearm" (as the Supreme Court later clarified in *Bailey*), his plea was not knowing or intelligent. *Id.* at 616 (internal quotation marks and citation omitted). The Supreme Court did not reach the merits of Bousley's claim (rather, it remanded for clarification of whether Bousley could factually make out a claim of "actual innocence" to excuse procedural default), but it stated in strongly worded *dictum* that where a record "reveals that neither [the petitioner], nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged[, the] petitioner's plea [is] constitutionally invalid." *Id.* at 618-19.

_____

[15] The majority takes the somewhat puzzling position that nobody was, in fact, mistaken at McKeever's plea because at that time "PACOA did . . . cover McKeever's conduct. . . . The law did not change until after McKeever pled and was sentenced." But the Pennsylvania Supreme Court's announcement of the correct interpretation of the PACOA statute is not a "change" in the law–it is simply what the law always was, except that it had been misunderstood. *See Kendrick v. District Attorney*, 916 A.2d 529, 538 (Pa. 2007) ("this Court's interpretation of the term 'enterprise' [as used in the PACOA] was not a 'new rule,' but must be deemed to have merely explicated the meaning and scope of the term from the Pa.C.O.A.'s original enactment in 1973"); *see also Rivers v. Roadway Express*, 511 U.S. 298, 312-12 (1994) ("judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.") The fact that the interpretation pursuant to which McKeever entered his plea was generally shared in the legal community does not make it any less of a mistake.

18

Although the petitioner in *Bousley* had pled guilty to multiple counts (as McKeever did in this case), he, unlike McKeever, did not challenge the entire plea on the basis of the shared misapprehension; rather he attacked only the validity of the specific plea to the Section 924(c) violation. Thus the issue of the potential invalidity of the entire plea agreement was not brought to the attention of the Court. Two sister circuits, however, have been confronted with this question and have held that, when the plea as to one violation is constitutionally invalid because the parties did not understand at the time that the statute did not reach the defendant's conduct, the entire plea agreement must be voided; courts should not simply "sever" the invalid pleas and treat the remainder of the plea agreement as valid.

In *United States v. Lewis*, 138 F.3d 840 (10th Cir. 1998), the petitioner had been charged with eleven counts of offenses involving drugs and firearms but, under a plea agreement, had pled guilty to just one of the counts, use of a firearm in relation to a drug trafficking offense under 18 U.S.C. §924(c). After the Supreme Court decided *Bailey*, Lewis attacked his conviction and sentence, arguing that he was unconstitutionally imprisoned because the statute under which he was convicted and sentenced did not reach his conduct. Lewis, however, did not request that the entire plea be voided (as that would leave him potentially vulnerable to prosecution on the other ten counts); rather, he requested immediate release, since he was imprisoned on the Section 924(c) count only. The Tenth Circuit held that, where a plea agreement is based on a mutual mistake as to the elements of a charge, the only appropriate remedy is to void the entire plea agreement, because a plea agreement is a "package" deal that a district court has the authority to "vacate . . . when a conviction that is part of the plea package is vacated." *Id.* at 842. Because the petitioner was "the party affected by the parties' mutual mistake[, h]is plea agreement with the government [was] voidable, if he so [chose]." *Id.* at 841. The court expressly declined to hold that the plea agreement was invalid only as to one part (Lewis's guilty plea to the 924(c) count) and not another (the dismissal of the other counts); if Lewis chose to pursue his habeas petition, the entire deal would be off and he

19

could face prosecution on all the originally dismissed counts.[16]

In support of its reasoning, the *Lewis* court quoted approvingly the Ninth Circuit's opinion in *United States v. Barron*, 127 F.3d 890 (9th Cir. 1997):

> Given the realities of plea bargaining, it makes good sense to apply the sentence package concept when a petitioner challenges one of multiple convictions obtained under a plea agreement . . .. Because the district court cannot possibly know what convictions or sentences [a defendant] would have received had he not pleaded guilty to the section 924(c) count . . ., an appropriate remedy is to put [the defendant] in the position he was in before he entered into the plea agreement or before the district court accepted the plea based on conduct which did not constitute the crime charged.

*Lewis*, 138 F.3d 843, quoting *Barron*, 127 F.3d at 895.[17]  *See also*

---

[16] The majority argues that *Lewis* is irrelevant to our purposes because the plea covered only one count and therefore "the constitutionality of vacating one count in a multi-plea agreement was simply not before the court." But the point in *Lewis* is that when there is a plea bargain, the court must look to the entire agreement and not simply to the end result. Thus the *Lewis* court recognized that the defendant's plea to one count was inextricably tied to the dismissal of the other counts, because that dismissal was implicitly part of the bargain.

[17] *Barron* held under similar circumstances that, although the habeas petitioner had simply requested resentencing once the prosecution had conceded that his conviction under Section 924(c) was invalid, the petition must be understood as an attack on the plea itself and the correct remedy was to set aside the entire plea. This decision was later vacated, however, and on rehearing en banc the Ninth Circuit held that since the petitioner had challenged his incarceration on one ground out of several allowed by Section 2255, the District Court was bound by the statutory language allowing four possible remedies ("discharge the prisoner or

20

resentence him or grant a new trial or correct the sentence as may appear appropriate"); it could not "eliminat[e] the two possibilities of resentencing or of correcting the sentence." *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999) (en banc). Thus the district court had erred in reasoning that "the only way Barron's motion could be granted was by construing it as an attack on the plea agreement" and granting the motion on condition that Barron agree to withdraw the plea. *Id.* The majority argues that the *Barron* en banc decision is "squarely on point" and invalidates the panel's reasoning (and *Lewis*, which relied on it). It is true that the Ninth Circuit, in its en banc decision, expressed doubts about the applicability of contract law to plea agreements, but these doubts are not the basis of its decision. Rather, the Ninth Circuit was primarily concerned with the propriety of the District Court's *sua sponte* modification of the petitioner's request for vacatur of a single conviction into a motion attacking the plea agreement. *See Barron*, 172 F.3d at 1158 ("It is only the analysis of the district court that turned this simple motion into something more, a challenge to the plea agreement. The district court had no authority to invent a new basis for Barron's motion and erred in doing so.") Indeed, the *Barron* en banc opinion explicitly *recognized* that "the argument that plea bargains must be treated as a package logically applies only in cases in which a petitioner challenges the entire plea as unknowing and involuntary," which is the case for McKeever but not for Barron. *Id.* at 1160. In doing so, *Barron* cited *United States v. Sandoval-Lopez*, 122 F.3d 797 (3d Cir. 1997), which again makes the same point: "Defendants sometimes bring collateral attacks on the plea agreements qua plea agreements, but claiming that their pleas were not 'knowing' or 'voluntary,' or were otherwise defective. Such attacks are directed at the entire agreement *and, if successful, may render the entire agreement void or voidable.*" *Id.* at 802 (emphasis added). The reasoning in the *Barron* en banc decision thus does not directly affect the conclusion that, if a prisoner attacks the validity of a plea on the grounds of mutual mistake, the proper remedy is to void the plea; it merely stands for the proposition that under Section 2255, a prisoner may attack his imprisonment on a variety of grounds and the district court has discretion to fashion a remedy according to the statute, but not to transform the petition into something it is not.

(noting in *dictum* that where a defendant attacks a plea agreement, the attack is "directed at the entire agreement, and, if successful, may render the entire agreement void or voidable," so that the "proper remedy" in such a case might be "to vacate or allow withdrawal of the guilty pleas and reinstate" the charges dismissed under the plea agreement); *United States v. Bunner*, 134 F.3d 1000, 1005 (10th Cir. 1998) (where defendant, relying on *Bailey,* had successfully attacked his conviction under Section 924(c), the underlying purpose of the plea agreement was frustrated, and the government's plea agreement obligations became dischargeable; thus, at the government's election, the parties could be returned to position they occupied before Bunner entered his guilty plea).

The Seventh Circuit Court of Appeals recently reached the same conclusion in *United States v. Bradley*, 381 F.3d 641 (7th Cir. 2004). *Bradley* also involved a mutual mistake as to the reach of 18 U.S.C. § 924(c), although in this case it was independent of the Supreme Court's holding in *Bailey*. On direct appeal, the court held that Bradley should be allowed to withdraw his entire plea, not just the plea to the Section 924(c) count. It reasoned, first, that the specific plea to Section 924(c) was not knowing and voluntary, and second, that because there was no "meeting of the minds on all [the] essential terms" of the plea agreement, the *entire* plea agreement, and not just the plea as to Section 924(c), was "tainted." *Id.* at 647-48.

The Supreme Court's decision in *Brady v. United States*, 397 U.S. 742 (1970), cited by the majority for the proposition that a plea agreement that fails to anticipate a change in the law is not *per se* unknowing and involuntary, is distinguishable from *Bousley*, *Lewis*, and *Bradley*. Brady had pled guilty to kidnaping (18 U.S.C. § 1201(a)) and had received a sentence of 50 years' imprisonment, later reduced to 30. Nine years later, the Supreme Court held in *United States v. Jackson*, 390 U.S. 570 (1968), that the death penalty provision in Section 1201(a) – mandating the death penalty for defendants convicted under this statute, if the victim was not liberated unharmed and if the jury recommended it, but providing that the judge could not impose the death sentence if the defendant pled guilty – needlessly chilled the exercise of the right not to plead guilty and to go to trial, because the defendant could not be sentenced to death if he pled guilty, but faced a significant

likelihood of capital punishment if he went to trial. Relying on *Jackson*, Brady then challenged his guilty plea to kidnaping, claiming among other things that his plea was not intelligent because his counsel had wrongly advised him that the jury had the power to condemn him to death (the power later found unconstitutional in *Jackson*).

The Court rejected Brady's argument, holding there was

> no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a *weaker case* than the defendant had thought or that *the maximum penalty then assumed applicable* has been held inapplicable in subsequent judicial decisions.

*Brady*, 397 U.S. 742, 757 (emphasis added). This phrasing (substantially repeated three times within two paragraphs of the opinion) clarifies the import of the more general proposition, also used on the same page, that "absent misrepresentation or other impermissible conduct by state agents . . . a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *Id*. The *Brady* Court was not faced with a situation where the statute simply did not reach the defendant's admitted conduct but the parties did not know this; Brady's lack of knowledge regarded the possible sentence, not the fact that he was actually innocent of the charges against him. If the Court had been faced with a situation where defendants would "falsely condemn themselves" because of an offer of leniency, the Court admitted, a different decision might be required. *Id*. at 758. Unlike Brady, McKeever did, in fact, "falsely condemn himself" – not because of an offer of leniency, but because nobody knew any better. McKeever's plea was unknowing in a far more basic sense than Brady's could have been.[18]

_____

[18] In the wake of *Brady*, the Supreme Court held a variety of other misapprehensions insufficiently important to invalidate a guilty plea, *see United States v. Ruiz*, 536 U.S. 622, 630-31 (2002),

Our sister circuits' decisions in *Lewis* and *Bradley*, concluding that a plea agreement such as the one here is voidable in its entirety, are based on the widely agreed-upon notion that plea agreements must be construed according to the general principles of contract law. *See United States v. Gebbie*, 294 F.3d 540, 551 (3d Cir. 2002) (rules of contract interpretation are applied to plea agreements); *Dunn*, 247 F.3d at 462 (if the government breaches a plea agreement, the remedy is either specific performance or rescission of the agreement and withdrawal of the entire plea); *Houmis v. United States*, 558 F.2d 182, 183 (3d Cir. 1977) (plea was invalid where the record revealed substantial confusion as to whether habeas petitioner "had understood the agreement, and thus [left] doubt as to whether any 'meeting of the minds' ever resulted from plea negotiations"). Under general principles of contract law, a contract based on a material mistake shared by the parties to the contract is voidable. *See Restatement (Second) of Contracts* § 152 ("[w]here a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake").

Of course, not all mistakes can lead to the voiding of a contract. The party wishing to void the contract "must show that the resulting imbalance in the agreed exchange is so severe that he can not fairly be required to carry it out. Ordinarily he will be able to do this by showing that the exchange is not only less desirable

---

but none of these cases involved something as central as the element of the crime. *United States v. Bownes*, 405 F.3d 634 (7th Cir. 2005), cited by the majority, is also not controlling, since it merely held that a broadly worded waiver of appeal in the defendant's plea agreement was effective even if the parties to the agreement had failed to anticipate the Supreme Court's decision in *Booker*, which might have provided the defendant with grounds for appeal. *Id.* at 636. The court in *Bownes* explicitly referred to the "absence of an explicit escape clause" as indicative of the parties' intention not to allow for any flexibility in the waiver. A misapprehension about the defendant's right to appeal his sentence is not of the same order as a misapprehension about whether he can be guilty of a charge.

24

to him but is also more advantageous to the other party."
*Restatement (Second) of Contracts*, § 152 cmt. c.  The majority
holds that the mutual misapprehension as to the reach of the
PACOA was not a mistake of the kind that would require rescission
of the plea agreement because, first, it is a mistake of law rather
than fact, and second, it is not material because "the heart of the
plea agreement was not the PACOA charges, but rather the drug
trafficking charges" and the primary purpose of the plea agreement
could be preserved by reforming the contract to conform to the
actual state of the law (i.e., by severing the pleas to the PACOA
counts).  I disagree.

First, whether the misapprehension as to McKeever's
innocence is characterized as a mistake of fact or law does not
change its impact on the deal McKeever struck with the
Commonwealth.  As several commentators have noted, modern
contract law has abandoned the strict view that "ignorance of the
law is no excuse" and therefore mutual mistakes of law do not
affect the validity of contracts even in situations that would give
rise to inequity.[19]  *See Restatement (Second) of Contracts* § 151
(defining "mistake" as "a belief that is not in accord with the
facts") and cmt. b ("[t]he rules stated in this Chapter do not draw
the distinction that is sometimes made between 'fact' and 'law.'
They treat the law in existence at the time of the making of the
contract as part of the total state of facts at that time"); 27 Richard
A. Lord, *Williston on Contracts* § 70:125 (4th ed. 1990) (noting
that in modern contract law, "[c]ourts generally disallow any
distinction between mistakes of fact and law, treating both alike for
purposes of equitable relief. . . .. To justify rescission, a mistake of
law must have related to a question, the answer to which was
assumed as part of the fundamental basis of the transaction."); 7-28
Joseph Perillo, *Corbin on Contracts* § 28.49 (revised ed. 2002)
("[t]oday, the rule denying relief for mistake of law has little
vitality.  It has been eroded by so many qualifications and
exceptions, varying from jurisdiction to jurisdiction.  It is common
to find cases where the issue is not even raised."); E. Allan
Farnsworth, *Contracts* § 9.2 ("the modern view is that the existing

---

[19] It goes without saying that it would not be practical to
insist on "knowledge" of the law in a case like this, since the
proper interpretation of the statute had not yet been declared.

law is part of the state of the facts at the time of agreement. Therefore, most courts will grant relief for such a mistake, as they would for any other mistake of fact.").

Moreover, whatever value this distinction may have in an ordinary commercial context, it is important to remember that plea agreements are "constitutional contracts" and unlike contracts in other spheres must "be construed in light of the rights and obligations created by the Constitution." *Ricketts v. Adamson*, 483 U.S. 1, 16 (1987). A mistake of law in this context has a constitutional dimension and cannot be treated as tainting the validity of the bargain made by the parties any less than a mistake of fact.[20]

Second, to say that the plea to the two PACOA counts did not affect the sentence finally imposed and that therefore the PACOA counts could not constitute the heart of the plea agreement, is to beg the question. McKeever obtained from the prosecution a treatment for the two PACOA counts that amounted to no additional jail time *in exchange* for his pleas to the drug trafficking counts. That the drug trafficking counts constituted the heart of the *sentence* McKeever received does not necessarily mean that they also constituted the heart of the *bargain*. The mutual mistake as to the reach of the PACOA caused McKeever to accept something valueless (the merger and concurrent sentence on the PACOA counts) in partial exchange for something valuable (his agreement not to contest the other counts). The two PACOA counts represented a potential additional prison term of fourteen years; the mistake as to whether his conduct was criminal under the PACOA could not have been immaterial.[21]

---

[20] In deciding *Lewis* and *Bradley*, our sister circuits declined to define the mistake as one of law or of fact, but it is clear that they understood it as one of law or, at most, a mixed one. *See Bradley*, 381 F.3d at 647 (the mistake was a "misunderstanding of the nature of the charge"); *Lewis*, 138 F.3d at 841 (the parties had a "mutually mistaken belief . . . that the evidence supported the section 924(c) count").

[21] The majority discusses the "sentencing package" doctrine to reach the conclusion that because McKeever was sentenced

26

Where a mistake regards a basic assumption on which the bargain is based, rescission of the contract is the preferred remedy; reformation is appropriate only when the mistake "is one as to expression." *United States v. Williams*, 198 F.3d 988, 994 (7th Cir. 1999) (quoting Restatement (Second) of Contracts § 155 cmt. a).[22] *See also United States v. Sandles*, 80 F.3d 1145, 1148 (7th Cir. 1996) ("[w]here there is a mutual misunderstanding as to the material terms of a [plea agreement], the appropriate remedy is rescission, not unilateral modification."); 27 *Williston on Contracts* § 70.35 (4th ed.) ("reformation must yield to rescission where the error is in the substance of the bargain, not in its expression"). *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 219 (3d Cir. 2003), cited by the majority, is not controlling because, first, it involved the reformation of a contract containing a provision that was contrary to public policy, not a contract grounded on a mistake of law; and second, the excised provision regarded a matter peripheral to the essence of the bargain (the allocation of attorney fees in a binding arbitration agreement). Where the parties have reached an agreement only part of which cannot be enforced, despite the

---

separately on the drug counts and the PACOA counts there is no need to resentence him upon a finding that he entered a plea on the basis of a mistake as to whether he could be guilty of the PACOA counts. This argument, however, misapprehends my position, which is not that the *sentence* was a package, but that the *plea agreement* was. A contract is no less a unified document because a party is charged separately for each item bought.

[22] In *Williams*, the defendant and the prosecutor both erroneously believed he faced a maximum sentence of ten years, rather than the fifteen he was, in fact, exposed to. When this was discovered, the District Court offered Williams the opportunity to withdraw his guilty pleas, but Williams felt this would not benefit him in any way; since he had already cooperated with the government, he would have no bargaining power to negotiate a new deal. On appeal, Williams argued the court should reform the plea agreement to conform to the parties' intent by forcing the government to drop two counts. The Court of Appeals affirmed the District Court's decision to offer Williams the opportunity to rescind the contract in its entirety, holding this was the only possible remedy.

27

parties' intent, because of the external constraints of public policy, it makes sense to allow the core of the contract to survive and invalidate only the sections that offend public policy. But where, as here, the parties are mistaken as to the nature of the bargain, the agreement should be set aside and the parties given the opportunity to renegotiate on the basis of the true value of the bargained-for promises – particularly where mistake as to the nature of the bargain is of constitutional significance; *i.e.*, if the activity covered by the plea is not a criminal offense, can the plea be a knowing and intelligent one.

## IV. Prejudice to the Commonwealth

I am mindful of the Commonwealth's argument that, if the plea were voided and McKeever chose to go to trial, the prosecution, through no fault of its own, would be significantly prejudiced by having to locate witnesses to drug transactions that were completed thirteen or fourteen years ago, even though McKeever has never contested his responsibility for them. However, even though a party's delay in declaring his intention to rescind a contract may preclude rescission in an ordinary contract case, the delay has less significance when the reason for rescission has constitutional implications.

Admittedly, McKeever did not act swiftly to put the Commonwealth on notice of his intention to rescind the plea when he learned of the mutual mistake. The initial decision of the Pennsylvania Supreme Court, holding the PACOA inapplicable to wholly illegitimate enterprises, was issued in 1996. *See Commonwealth v. Besch*, 674 A.2d 655 (Pa. 1996). Even assuming that McKeever did not begin collateral review proceedings at that time because the Pennsylvania legislature promptly amended the statute so that it would clearly apply to illegitimate enterprises, he must have known at the latest by 1999 (when the Pennsylvania Supreme Court issued *Commonwealth v. Shaffer*, 734 A.2d 840 (Pa. 1999)) that the amended statute did not apply retroactively to him.[23] Yet, McKeever waited almost four years–until June 2003–to

---

[23] McKeever concedes as much when he asserts that he "relied on *Shaffer*" when he sought collateral review.

It could be argued that McKeever did not act dilatorily, but

28

seek collateral review of his conviction.

In general, a delay of this kind would weaken a party's right to rescission of the contract as an equitable remedy. *See Grimes v. Sanders*, 93 U.S. 55, 62 (1876) (holding, in the context of unilateral mistake, that the party desiring rescission "must, upon the discovery of the facts, at once announce his purpose, and adhere to it"). This conclusion would be strengthened by the prejudice inflicted on the Commonwealth by each intervening year. *See id.* at 62 ("A court of equity is always reluctant to rescind, unless the parties can be put back in statu quo. If this cannot be done, it will give such relief only where the clearest and strongest equity imperatively demands it").

In the context of constitutional violations, however, both the Supreme Court and this Court have declined the invitation to consider the prejudice to the prosecution of having to try–or retry–a defendant on the basis of stale evidence. In *Vasquez v. Hillery*, 474 U.S. 254 (1986), the Supreme Court upheld the grant of a new trial to a black petitioner who had been indicted by a grand jury from which blacks were systematically excluded. In dissent, Justice Powell argued relief was inappropriate where the violation occurred in the distant past (twenty-six years, in that case) and where the State could show it would be substantially prejudiced in its ability to retry the defendant. *Id.* at 279-282 (Powell, J., dissenting). The majority, however, rejected the dissent's "theory . . . , which would condition the grant of relief upon the passage of time between a conviction and the filing of a petition for habeas corpus, depending upon the ability of a State to obtain a second

---

rather prematurely, since the Pennsylvania Supreme Court has only recently held that *Besch* applies retroactively to cases on collateral review. *See Kendrick v. District Attorney*, 916 A.2d 529 (Pa. Feb. 20, 2007). Unlike McKeever, however, Kendrick sought collateral review of his conviction on *Besch* grounds by amending his PCRA petition immediately after *Besch* was decided, and timely pursued federal remedies after exhausting the state PCRA process. *Id.* at *1-2.

29

conviction." *Id.* at 264.[24] *See also United States v. Nahodil*, 36 F.3d 323, 327-28, 330 (3d Cir. 1994) (noting, in Section 2255 context, that although "prejudice to the government's ability to retry the case" is a factor to be considered in ruling on a motion to withdraw a plea under Fed. R. Crim. P. 11(d)(2)(B), "prejudice to the government's ability to bring a case to trial is not dispositive of a motion to withdraw the guilty plea if the original acceptance of the plea was improper or improvident").[25]

Therefore, I conclude that the District Court should have granted the writ and ordered McKeever released unless his entire plea was rescinded. I respectfully dissent from the majority's holding that vacating the PACOA convictions and resentencing was a sufficient remedy.

---

[24] The majority in *Vasquez* justified its position, among other things, on the absence of a statute of limitations for Section 2254 petitions and on Congress' unwillingness to amend the wording of 28 U.S.C. § 2254 Rule 9(a) (repealed 2004), which provided a defense to the State where it was "prejudiced in its ability to respond to the petition by delay in its filing," but not where the prejudice concerned its ability to bring the petitioner to justice. These considerations have less weight since the adoption of the AEDPA statute of limitations and the repeal of Rule 9(a). However, to allow McKeever to escape the AEDPA statute of limitations on the grounds of "actual innocence" and then deny him the appropriate relief because of his delay in filing his petition would amount to reviving a stricter version of Rule 9(a) by judicial action. I do not believe this would be appropriate.

[25] We are not faced here with a situation where the plea agreement contained an explicit waiver on the part of the defendant of his right to challenge the entire plea if one or more of the statutes under which he was charged are subsequently interpreted not to reach his conduct. I therefore express no view as to whether this might be an effective way to ensure that prosecutors acting in good faith avoid the problems that arose here and that defendants receive the benefits of their bargain.