**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2604
_____

ELTON EUGENE HILL, II,

Appellant

v.

SUPERINTENDENT MAHANOY SCI;
ATTORNEY GENERAL PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. No. 1-10-cv-00574
District Judge: Honorable Christopher C. Conner

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 13, 2019

Before: CHAGARES, JORDAN, and RESTREPO, Circuit Judges.

(Filed: October 11, 2019)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Circuit Judge.

In this appeal of a denial of a § 2254 habeas petition, this Court granted a certificate of appealability on one issue: was petitioner Elton Hill's trial counsel ineffective for failing to move to suppress statements that Hill made following a polygraph? The Pennsylvania courts answered no, and the District Court held that this answer was not an unreasonable application of federal law. We will affirm.

I.

We write for the parties and so recite only the facts necessary to our disposition.

After driving home from a party, Hill and a friend were discussing their desire to beat up another young man in their class. Hill was 17 years old. They walked to their classmate's house, where his family was sleeping — their classmate in one room, his father in another, and his mother in a third with two younger children. Hill's friend entered the house, while Hill claims he retrieved and waited in it.

Wielding a baseball bat, Hill's friend entered the room where the mother and children were sleeping. He awoke the mother, threatened to injure her sleeping children with the bat, and raped her. The father then burst in, subdued the attacker, and ran outside. Hill sped away in his car and, when the father drove after him, Hill tried to run him off the road.

The next morning, police officers interviewed Hill at his house. One of them was Daniel Kelly. Hill gave a short statement. Three days later at the police station, Hill answered questions and provided a more detailed statement, after which he was arrested and charged with various offenses. Hill's parents hired an attorney.

2

Hill's attorney decided that a polygraph exam would benefit Hill's case, since he was persuaded that Hill never entered the house. He reviewed the polygraph questions beforehand and trusted the detective who would administer the exam, Joseph Steenson. The attorney advised Hill to tell the truth, but said nothing about post-polygraph questioning. Hill executed a signed waiver of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). That form has been lost, but it apparently indicated that Hill would "consent to talk with" Steenson and mentioned polygraphs multiple times. Joint Appendix 124.

Hill took the polygraph and failed. He then gave Steenson a contradictory written statement. Steenson left the room, and Kelly entered. Kelly interrogated Hill about the discrepancies in his statements, and Hill provided further incriminating details.

At trial, the prosecution tried to discredit Hill due to his inconsistent statements. Kelly testified that he had confirmed with Hill that he was aware of his Miranda rights before the post-polygraph questioning, and Hill testified that he knew he had the right to stop the questioning or remain silent at any time during that interview. Hill was convicted by a jury of numerous crimes.

After losing his direct appeal, Hill sought collateral relief under the Pennsylvania Post Conviction Relief Act (PCRA). At the PCRA hearing, Hill testified that Kelly offered no further Miranda warnings before the post-polygraph questioning and that he had asked for his attorney. But Kelly again testified that he had confirmed Hill knew his Miranda rights and that Hill never asked for his attorney. Hill's attorney also testified. In addition to explaining why he thought the polygraph itself would be beneficial, Hill's

3

attorney testified that he did not believe that the post-polygraph statements were harmful at trial because he thought that the jury would understand a scared kid giving accounts with some inconsistencies. He also testified that he felt the statements might even have been beneficial, since Hill was consistent that he never entered the home. That, he explained, was why he did not move to suppress them.

The PCRA court denied relief. It found that the agreed-upon polygraph process encompassed the post-polygraph questioning and credited Kelly's testimony that Hill did not invoke his right to silence or to counsel. Thus, it held that Hill's attorney was not ineffective for declining to move to suppress. A divided Pennsylvania Superior Court originally reversed, holding that the written waiver did not extend to post-polygraph questioning. Pennsylvania v. Hill, 42 A.3d 1085 (Pa. Super. Ct. 2012). But that decision was itself reversed by the Pennsylvania Supreme Court, which concluded that the Superior Court had overlooked the trial testimony that Hill was aware of his Miranda rights during this interview (among other errors). Pennsylvania v. Hill, 104 A.3d 1220 (Pa. 2014). On remand, the Superior Court affirmed that the PCRA court's findings of fact demonstrated that Hill voluntarily made his post-polygraph statements and a motion to suppress would have been without merit. Pennsylvania v. Hill, No. 646 MDA 2011, 2015 WL 6875004 (Pa. Super. Ct. July 10, 2015).

Hill then petitioned for habeas relief under § 2254, which the District Court denied. This timely appeal followed.

4

## II.

The District Court had jurisdiction under 28 U.S.C. § 2254, and we have appellate jurisdiction under 28 U.S.C. § 1291 and 28 U.S.C. § 2253. Since the District Court held no evidentiary hearing, our review is plenary. McKeever v. Warden SCI-Graterford, 486 F.3d 81, 83 (3d Cir. 2007).

## III.

We review Hill's claim of ineffective assistance of counsel "[u]nder the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). Under Strickland, "[j]udicial scrutiny of counsel's performance must be highly deferential" and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 689 (1984). And under § 2254(d), federal habeas relief may not be granted unless the earlier state court's decision "was contrary to" or "involved an unreasonable application of" federal law then clearly established by the Supreme Court, or "was based on an unreasonable determination of the facts" in light of the record before the state court. Harrington v. Richter, 562 U.S. 86, 100 (2011). Our inquiry is limited to "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. at 105.

The state courts held that Hill's attorney was not ineffective because a motion to suppress would not have been meritorious. The merits of a motion to suppress turn on whether Hill's uncounseled post-polygraph statements were made voluntarily, knowingly, and intelligently based on the totality of the circumstances. See Wyrick v.

5

Fields, 459 U.S. 42, 47–48 (1982).  The circumstances suggest that they were.  There was "clear evidence that [Hill] understood [his] right[s] and was aware of his power to stop questioning at any time or to speak to an attorney at any time" during post-polygraph questioning.  Id. at 48.  Most clear of all, Hill himself testified at trial that he knew and understood his rights at the time.  Hill now emphasizes that he was a minor unexperienced with the criminal-justice system, which he argues the state courts unreasonably ignored.  But there is no indication in the record that he failed "to understand the rights he was waiving, or what the consequences of that waiver would be," because of his age or inexperience.  Fare v. Michael C., 442 U.S. 707, 726 (1979).  Though technically a minor, Hill was only four months away from his eighteenth birthday.  He testified at trial that he did well in school, had good SAT scores, had an interest in computer programming, and planned to go to college.  "There is no indication that he was of insufficient intelligence" or was otherwise "unable to understand the nature of his actions."  Id.  Concluding that Hill's counsel performed effectively when he declined to move to suppress the post-polygraph statements was not an unreasonable application of federal law.

## IV.

For these reasons, we will affirm the judgment of the District Court.

6